AUTO CLUB INSURANCE ASSOCIATION v NEW YORK LIFE
INSURANCE COMPANY

Docket No. 90604. Argued March 3, 1992 (Calendar No. 5). Decided
June 30, 1992.

Auto Club Insurance Association, a no-fault insurance carrier,
brought an action in the Wayne Circuit Court against New
York Life Insurance Company, a health insurance carrier,
seeking reimbursement for coördinated medical expenses paid
to an insured for injuries sustained in an automobile accident.
The court, Claudia H. Morcom, J., denied summary disposition
for New York Life, finding that the one-year limitation period
of § 3145 of the no-fault act was inapplicable because the action
did not seek personal protection insurance benefits, but rather
was a subrogation claim for health and accident benefits, and
thus governed by the six-year limitation period for contract
actions. The Court of Appeals, GRIBBS, P.J., and CAVANAGH and
MARILYN J. KELLY, JJ., reversed in an opinion per curiam,
holding that no matter how the action is characterized, it is one
for recovery of no-fault benefits paid (Docket No. 115365). The
plaintiff appeals.

In a unanimous opinion by Justice GRIFFIN, the Supreme
Court held:

Section 3145(1) of the no-fault act does not apply to ACIA's
common-law action as subrogee to recover benefits due under
the health and accident insurance contract issued by New York
Life; the subrogation claim is governed by the six-year period of
limitation applicable to contract actions generally.

1. The no-fault act encourages coördination of personal pro-
tection insurance benefits with overlapping health and accident
coverage that protects the same insured under a separate
insurance contract. When overlapping benefits are coördinated,
an insured obtains required coverage at a lower rate, while the
insurer's reduced profit is offset by reduction of its potential
liability. In this case, because the insured elected coördination,

REFERENCES
Am Jur 2d, Automobile Insurance §§ 442, 443.
See the Index to Annotations under Subrogation.

New York Life bears the primary obligation for the insured's medical expenses.

2. While subrogation is not available to a mere volunteer, an insurance carrier that pays the expenses of its own insured pursuant to an insurance contract is not a volunteer. In this case, in addition to its contractual obligations, ACIA was subject to a variety of incentives imposed by the no-fault act that encourage prompt payment of claims. Because it was protecting its own interests and did not act as a volunteer when it paid the medical expenses of its insured, it is entitled to invoke the doctrine of subrogation.

3. The one-year limitation period of § 3145(1) applies only to an action for recovery of personal insurance protection benefits payable under the no-fault act. The nature of a suit by a subrogee is determined by the nature of the claim that its insured would have had. In this case, ACIA, as subrogee, is asserting the insured's ·right to maintain a cause of action against New York Life, the primary insurer, for its bad-faith failure to satisfy its policy obligations. ACIA is equitably subrogated to the position of the insured and acquires no lesser or greater rights than those held by the insured. Thus, the present action falls outside the scope of § 3145(1).

4. By its terms § 3145(1) applies only to benefits payable under the act. The health and accident benefits provided by New York Life were payable without regard to the no-fault act. Even though, as a result of coördination, the obligation of New York Life became primary, it was not transformed into a no-fault insurer. Just as coördination with a no-fault policy does not subject New York Life to the costly requirements of the no-fault act, coördination does not entitle it to invoke the act's reduced limitation period.

Reversed.

187 Mich App 276; 466 NW2d 711 (1990) reversed.

INSURANCE — LIMITATION OF ACTIONS — CONTRACTS — NO-FAULT ACT — COÖRDINATION OF BENEFITS — SUBROGATION.

The one-year period of limitation of the no-fault act does not apply to a secondary insurance carrier's common-law subrogation action to recover coördinated benefits due an insured under a health and accident insurance contract with a primary carrier; rather, the subrogation claim is governed by the six-year limitation applicable to contract actions generally (MCL 500.3145[1], 600.5813; MSA 24.13145[1], 27A.5813).

*Brandt, Hanlon, Becker, Lanctot, McCutcheon,*

*Schoolmaster & Taylor* (by *David J. Lanctot* and
*Darlene Lynn Petrosky*); *Gross & Nemeth,* of coun-
sel (by *James G. Gross*), for the plaintiff.

*Fitzgerald, Peters, Dakmak & Miller, P.C.* (by
*Neill T. Peters* and *Stuart J. Snider*), and *John R.
O'Hanlon,* Vice President and Deputy General
Counsel, and *P. Michael Madden,* Associate Gen-
eral Counsel, for the defendant.

GRIFFIN, J. Although its obligation was only
secondary, plaintiff no-fault insurance carrier paid
most of the medical expenses of its insured when
he was seriously injured in an automobile acci-
dent, and then brought this suit for reimburse-
ment against defendant health insurance carrier
whose coverage of the same insured was primary.
However, the action is time-barred if, as the Court
of Appeals held, the one-year limitation of
§ 3145(1) of the no-fault act[1] is applicable. Because
we conclude that plaintiff's subrogation claim is
governed instead by the six-year limitation period[2]
generally applicable to contract actions, we re-
verse.

I

Hatim Raja was seriously injured in an automo-
bile accident on August 23, 1983, and died from
his injuries on October 10, 1984. The medical ex-
penses he incurred as a result of the accident were
covered by two separate contracts of insurance.
Raja was insured under a no-fault automobile
insurance policy issued by plaintiff Auto Club
Insurance Association, and he was also insured
under a group major medical plan issued by defen-
dant New York Life Insurance Company. As he

[1] MCL 500.3145(1); MSA 24.13145(1).
[2] MCL 600.5807(8); MSA 27A.5807(8).

was permitted to do under § 3109a of the no-fault act,[3] Raja had elected to coördinate medical expense coverage under the two insurance contracts.

Following the accident, a dispute developed between the two carriers regarding which had the primary obligation to pay the insured's medical expenses. Although ACIA notified NY Life, as well as the insured, that it considered its obligation secondary to that of NY Life, it proceeded to pay all but one of the medical bills.[4] Then, in August 1988, approximately four years after ACIA made its final benefit payment, it commenced this action against NY Life, seeking reimbursement for the payments made.

NY Life moved for summary disposition pursuant to MCR 2.116(C)(7), claiming that the suit was barred because it had not been filed within the one-year limitation period provided in § 3145(1):

> An action *for recovery of personal protection insurance benefits payable under this chapter* for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time *within 1 year after the most recent allowable expense,* work loss or survivor's loss has been incurred. [Emphasis added.]

It is undisputed that the action was not commenced within one year after payment by ACIA of the most recent allowable expense.

---

[3] MCL 500.3109a; MSA 24.13109(1).

[4] NY Life made a single payment to one of Raja's health care providers in May 1985.

Denying the motion for summary disposition, the trial court found § 3145(1) inapplicable, reasoning that the suit brought by ACIA is not an action for personal protection insurance benefits, but rather is an action for health and accident benefits under the insurance contract issued by defendant NY Life.

On appeal, however, the Court of Appeals reversed. Citing and quoting *Badger State Mut Casualty Ins Co v Auto-Owners Ins Co,* 128 Mich App 120, 127; 339 NW2d 713 (1983), the panel concluded that " '[n]o matter how one characterizes the plaintiff's action, it is, in effect, a suit for recovery of no-fault benefits paid.' " 187 Mich App 276, 278; 466 NW2d 711 (1990).

We granted leave to appeal. 439 Mich 867 (1991).

II

As this Court explained in *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978), cert den 442 US 934 (1978), the no-fault insurance act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.,* enacted in 1972,

> was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses.

The *Shavers* Court also said:

> The Legislature believed this goal could be most effectively achieved through a system of *compulsory* insurance, whereby every Michigan motorist would be required to purchase no-fault insurance

or be unable to operate a motor vehicle legally in this state. Under this system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common-law remedy in tort. [*Id.* at 579. Emphasis in original.]

In keeping with the system's goal, the no-fault act encourages coördination of personal protection insurance benefits with overlapping health and accident coverage that protects the same insured under a separate insurance contract. Section 3109a provides:

An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

As the Court of Appeals has explained, when overlapping benefits are coördinated, the insured obtains the "required coverage at a lower rate, while the insurer's reduced profit is offset by the reduction in its potential liability." *Auto-Owners Ins Co v Farm Bureau Mut Ins Co,* 171 Mich App 46, 52; 429 NW2d 637 (1988).

Although Raja, the insured, had elected coördination in accordance with § 3109a, as earlier noted, each of his two insurers initially claimed that the other was primarily liable for his medical expenses. However, before the commencement of this action, our Court decided *Federal Kemper Ins*

*Co, Inc v Health Ins Administration, Inc,* 424 Mich 537; 383 NW2d 590 (1986). There, considering analogous circumstances, we held that the no-fault insurer's obligation is secondary to that of the health and accident insurance carrier. Thus, it was clear when this action was filed, and it is clear now that, absent a time-bar, NY Life bears the primary obligation for Raja's medical expenses.

### III

Despite its status as a no-fault insurer, ACIA maintains that its claim against NY Life is not based on the no-fault act. Rather, ACIA's position is that it has filed a common-law contract action as subrogee of Raja to recover benefits due him under the insurance contract issued by NY Life. As this Court has explained:

> "The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect." [*Machined Parts Corp v Schneider,* 289 Mich 567, 574; 286 NW 831 (1939), citing *French v Grand Beach Co,* 239 Mich 575, 580; 215 NW 13 (1927).]

While subrogation is not available to a "mere volunteer," *Smith v Sprague,* 244 Mich 577, 580; 222 NW 207 (1928), this Court has determined that where an insurance carrier pays the expenses of its own insured pursuant to an insurance contract, it is not a volunteer. *DAIIE v Detroit Mut Automobile Ins Co,* 337 Mich 50; 59 NW2d 80 (1953). In addition to its contractual obligations, ACIA was

subject to a variety of incentives imposed by the no-fault act that encourage the prompt payment of claims. For example, § 3142 requires a no-fault insurer to pay penalty interest of twelve percent on covered benefits that are not paid within thirty days of receipt of reasonable proof of loss.[5] This penalty is in addition to statutory interest payable under MCL 600.6013; MSA 27A.6013. See Wood v DAIIE, 413 Mich 573, 589; 321 NW2d 653 (1982). Further, § 3148 provides for assessment of attorney fees if the court finds that a no-fault insurer has unreasonably delayed in making benefit payments.[6] Particularly in the light of such incentives, it is clear that ACIA was protecting its own interests and did not act as a volunteer when it paid the medical expenses of its insured. Persuaded that ACIA is entitled to invoke the doctrine of subrogation, we turn next to consider whether its claim for reimbursement is barred by § 3145(1).

IV

NY Life concedes that, ordinarily, a subrogee

---

[5] Section 3142 provides:

(1) Personal protection insurance benefits are payable as loss accrues.
(2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. . . .
(3) An overdue payment bears simple interest at the rate of 12% per annum.

[6] Section 3148 provides:

(1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

has the same cause of action as the subrogor, and that if Raja or his estate had sued to recover health and accident benefits under the NY Life contract, the action would not be governed by § 3145(1).[7] However, NY Life advances two arguments to support its position that this action by ACIA is time-barred.

First, NY Life contends that such a result is required because ACIA seeks reimbursement for personal protection insurance benefits and § 3145(1) applies to all actions for the recovery of personal protection insurance benefits payable under the no-fault act. Second, NY Life argues that § 3145(1) should apply because, in effect, it became a no-fault insurer when Raja coördinated his health and accident policy with his no-fault coverage. We shall consider each of these arguments in turn.

A

Finding § 3145(1) applicable on the ground that ACIA's suit is for recovery of personal protection insurance benefits payable under the no-fault act, the Court of Appeals relied upon its earlier decision in *Badger State v Auto-Owners, supra.* There, a no-fault insurer paid personal protection insurance benefits for medical expenses arising out of an automobile accident and later learned that its insured was entitled to workers' compensation benefits because he had been injured in the course of his employment. Three years after the accident, the no-fault insurer sought reimbursement in a

---

[7] In its brief in the Court of Appeals, NY Life stated:

Since Raja, personally, would have had six years to sue [NY Life] for his medical benefits, ACIA, as subrogee, would ordinarily stand in Raja's shoes.

suit against the workers' compensation carrier, claiming that the latter was primarily obligated for the medical expenses associated with the employee's work-related injuries. Although the *Badger State* panel acknowledged that an action by the insured against the workers' compensation carrier would not have been time-barred, it concluded that the one-year limitation period of § 3145(1) nevertheless applied. Claiming that its focus was on the "subject matter" of the action, the panel stated that "[n]o matter how one characterizes the plaintiff's action, it is, in effect, a suit for recovery of no-fault benefits paid . . . ." 128 Mich App 127.

We disagree with the reasoning of the *Badger State* panel and with the conclusion of the Court of Appeals in this case. As the words of § 3145(1) clearly indicate, its one-year limitation period applies only to "[a]n action for recovery of personal protection insurance benefits payable under this chapter . . . ." Even though ACIA paid benefits pursuant to a no-fault policy, it does not follow that its present suit against NY Life is an action to recover personal protection insurance benefits payable under the no-fault act. Rather, the nature of the present suit by ACIA, as subrogee, is determined by the nature of the claim that Raja would have had against NY Life. As one authority has explained:

> The identity of a cause of action is not changed by the subrogation of an insurer thereto. Thus, the subrogation results only in a change in the beneficial ownership of the cause and has no effect on the character or underlying basis of the cause of action.
> The right of subrogation is purely derivative as the insurer succeeds only to the rights of the insured, and no new cause of action is created. In

other words, the concept of subrogation merely gives the insurer the right to prosecute the cause of action which the insured possessed against anyone legally responsible for the latter's harm; and this is so even though the right of subrogation is expressly declared by statute. [16 Couch, Insurance, 2d (rev ed), § 61:37, pp 120-121.]

Likewise, as we have recognized in a similar context:

"Since the insured would have been able to recover from the primary carrier for a judgment in excess of policy limits caused by the carrier's wrongful refusal to settle, the excess carrier, who discharged the insured's liability as a result of this tort, stands in the shoes of the insured and should be permitted to assert all claims against the primary carrier which the insured himself could have asserted." [*Commercial Union Ins Co v Medical Protective Co,* 426 Mich 109, 118; 393 NW2d 479 (1986), quoting *Commercial Union Assurance Cos v Safeway Stores,* 26 Cal 3d 912, 917-918; 610 P2d 1038 (1980). See also *Farmers Ins Group v Progressive Casualty Ins Co,* 84 Mich App 474, 485; 269 NW2d 647 (1978).]

In this case, ACIA, as subrogee, is asserting the insured's right to "maintain a cause of action against a primary insurer for the latter's bad-faith failure to [satisfy its policy obligations]." *Commercial Union,* 426 Mich 119. It "is equitably subrogated to the position of the insured and acquires no lesser or greater rights than those held by the insured." *Id.* In these circumstances, we agree with reasoning provided by the Court of Appeals in *Adams v Auto Club Ins Ass'n,* 154 Mich App 186, 196; 397 NW2d 262 (1986):

[B]ecause defendant's action seeking recovery for amounts overpaid involves a common-law right of

action, the limitation found in § 3145(1) is not applicable. Since there is no other statute of limitations directly applicable, the general six-year limitation period argued by defendant must be applied. Although we recognize that a strong argument to the contrary could be made, see *Badger State Mut Casualty Ins Co v Auto-Owners Ins Co,* [*supra,*] we believe that plaintiff's argument tortures the language of § 3145 and the legislative intent in enacting that section in attempting to extend the limitation period found in that section to the facts of this case involving a common-law right of action. [See also *Transamerica Ins Co v Peerless Industries (MASCO),* 698 F Supp 1350 (WD Mich, 1988).][8]

Because a suit brought by Raja, the insured, against NY Life to enforce its health and accident insurance contract would not be an "action for recovery of personal protection insurance benefits payable under [the no-fault act]," we believe it would distort the meaning and purpose of the statute to apply its brief limitation period to this

[8] We also note our disagreement with the assertion of the panel in *Badger State* that refusing to apply the relatively short one-year limitation period of § 3145(1) to suits between a no-fault insurer and a health and accident insurer would interfere with the prompt settlement of no-fault claims. 128 Mich App 129. Instead, we agree with the reasoning of the court in *Transamerica Ins Co v Iron Workers Local 340 Health Care Fund,* unpublished opinion of the United States District Court for the Western District of Michigan, decided August 4, 1988 (Docket No. G88 98 CA 1), pp 6-7:

As the court noted in *Federal Kemper [Ins Co v Western Ins Cos,* 97 Mich App 204; 293 NW2d 765 (1980)], the purpose of the no-fault act is to insure prompt notice of claims and quick payments to insured persons who are injured in automobile accidents. The statute requires that a no-fault carrier pay the insured's claim promptly and iron out the details of liability with other insurers later. *Federal Kemper,* 97 Mich App at 209, 211. The legislative intent behind the no-fault act is fully served where, as here, the no-fault carrier promptly pays the insured's claim. It cannot be adversely affected by later actions between insurers seeking to iron out the details of liability among themselves.

common-law contract action. ACIA, as subrogee, stepped into the shoes of its insured and sued on the same claim that would have been available to its insured; thus, we conclude that the present action falls outside the scope of § 3145(1).

B

NY Life alternatively argues that because Raja elected to coördinate his health and accident coverage with his no-fault policy, NY Life became, in effect, a no-fault insurer,[9] and that the benefits available to Raja under its coverage therefore were no-fault benefits within the meaning of § 3145(1). We disagree.

By its terms, § 3145(1) applies only to benefits "payable under this chapter." The health and accident benefits provided under the insurance contract issued by NY Life were payable without regard to the no-fault act. As we said in *LeBlanc v State Farm Mut Automobile Ins Co,* 410 Mich 173, 201; 301 NW2d 775 (1981):

> [T]he fact that "other health and accident coverage" immediately follows a reference to "personal protection insurance benefits" [in § 3109a] compels a conclusion that "other health and accident coverage" clearly means coverage other than personal protection insurance benefits payable under any no-fault policy.

Indeed, to hold that coördinated health and accident benefits are no-fault benefits, subject to the requirements of the no-fault act, would subvert an important purpose of the coördination provision, § 3109a. In *Federal Kemper Ins Co v Health*

---

[9] In its brief to this Court, defendant writes:

To the extent of [NY Life's] payment of those benefits [Raja's medical benefits, NY Life] has, in effect, paid PIP benefits . . . as a no-fault insurer under the Act.

*Ins Administration, Inc, supra,* 424 Mich 550, we recognized that § 3109a was enacted as a means of controlling health care costs. One way of containing those costs is for an insurer to place dollar limits upon the amounts it will pay to doctors and hospitals for particular services. While health and accident carriers generally are free to establish such limits, a no-fault insurer is not. Only the statutory qualification of reasonableness limits the amount that must be paid by a no-fault carrier for covered medical expenses.[10] Thus, as the *Kemper* Court concluded, "health care costs are contained by recognizing health [and accident] insurance as primary." *Id.*

Even though, as a result of coördination, the obligation of NY Life to provide benefits became primary, it does not follow that NY Life was transformed into a no-fault insurer any more than it follows that the benefits due under its policy were transformed into no-fault benefits. We find support for this conclusion in *Welton v Carriers Ins Co,* 421 Mich 571; 365 NW2d 170 (1984). There, we recognized that the relatively short limitation period in § 3145(1), which protects no-fault insurers against stale claims, is part of a comprehensive legislative scheme with the goal, inter alia, of protecting no-fault insureds by requiring the prompt payment of claims. *Id.* at 578-579. However, NY Life is not governed by the act's provisions relating to prompt payment, even when benefits have been coördinated. For example, NY Life is not subject to the act's statutory interest pen-

---

[10] Section 3107 states:

    (1) Personal protection insurance benefits are payable for the following:

    (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation.

alty if it fails to pay benefits quickly,[11] and it is not required by the act to pay attorney fees incurred by its insured in an action to obtain no-fault benefits that have been unreasonably denied.[12]

Just as coördination with a no-fault policy does not subject NY Life to these costly requirements of the no-fault act, coördination does not entitle NY Life to invoke the relatively short limitation period of § 3145(1).

V

Because § 3145(1) of the no-fault act does not apply to plaintiff's common-law action as subrogee to recover benefits due under the health and accident insurance contract issued by defendant, we reverse the decision of the Court of Appeals.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, RILEY, and MALLETT, JJ., concurred with GRIFFIN, J.

---

[11] MCL 500.3142(3); MSA 24.13142(3).

[12] MCL 500.3148(1); MSA 24.13148(1). Similarly, coördination with a no-fault policy does not oblige a health insurer to contribute to the catastrophic claims association fund established by the no-fault act to spread the costs of large losses among all no-fault insurers. See MCL 500.3104(1); MSA 24.13104(1).