**The WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Cindy Sue WALL, Defendant.**

**Civ. A. No. 94–75225.**

United States District Court,
E.D. Michigan,
Southern Division.

May 25, 1995.

**1156**

C. Robert Beltz, Charles D. Riley, Beltz & Nickola, Flint, MI, for defendant.

Thomas E. Chittle, Flint, MI, for plaintiff.

*MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Plaintiff Western and Southern Life Insurance Company ("Company") filed this action against defendant Cindy Sue Wall to recover benefits paid by the Company's Life, Medical and Disability Benefit Plan ("Plan"). The Plan was established and maintained pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* Before the court are plaintiff's and defendant's motions for summary judgment.

### I. Facts

Wall was an employee of the Company when she was injured in a motor vehicle accident on December 21, 1991. The accident occurred when Wall's motor vehicle was struck by another motor vehicle driven by Ellen Harquist, who is not a party to this action. At the time of the accident, the Company had in effect the Plan, maintained pursuant to ERISA. The medical benefits provided by the plan are self-funded. Wall was also covered by a Michigan no-fault auto insurance policy issued by AAA Michigan.

After the accident, the Plan paid Wall $21,-053.52 in medical benefits.[1] AAA Michigan paid Wall disability, or wage-loss, benefits of $10,134.72. According to Wall, AAA Michigan also paid medical expenses not covered by the Plan. Wall also recovered $100,000 from Harquist's auto insurer in settlement of Wall's personal injury claim.

The Company repeatedly notified Wall that it intended to pursue its subrogation claim. Defendant's attorney repeatedly informed that Company that it had no subrogation rights to defendant's third party recovery. The Company filed this action to recover the $21,053.52 in medical expense benefits which the Plan paid to Wall. Before the court are cross-motions for summary judg-

ment filed by the plaintiff Company and defendant Wall.

### II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genu-

---

1. Wall asserts that the Plan still owes her disability benefits. However, because this action was brought by the Insurance Company to recover medical benefits and Wall has not filed any claims against the Plan for recovery of disability benefits allegedly owed to her, the court will not address the factual allegations made by the parties regarding this issue.

ine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings. *Id.*

### III. Analysis

Plaintiff Company seeks recovery of $21,053.52 which the Plan paid to Wall in medical benefits. The Company argues that two separate sections of the Plan, sections 12.3 and 12.4, provide the Company with the right to recover the medical benefits.

**2.** Defendant relies on *Northern Group Services v. Auto–Owners Ins. Co.,* 833 F.2d 85, 87 (6th Cir. 1987). However, in *Lincoln Mutual,* 970 F.2d at 210, n. 3, the court stated that "the deemer clause relieves ERISA benefit plan—both uninsured and insured—from direct state regulation, but, because the clause does not relieve a plan's insurer, state regulation may have an incidental, or 'indirect,' effect on ERISA plans." *Id.* The court further held that to the extent that *Northern*

### A. ERISA Preemption

The first issue to be determined in analyzing this action is whether state law is preempted by ERISA. Wall argues that the Michigan No–Fault Act governs this action and bars the Company's claim. The Company argues that ERISA preempts state law in this action. The court agrees with the Company. ERISA preempts state laws insofar as they "relate to" any employee benefit plan. 29 U.S.C. § 1144(a). ERISA does not preempt state laws which regulate insurance. 29 U.S.C. § 1144(b)(2)(A).[2] Although the Michigan No–Fault Act regulates insurance, ERISA preempts even state laws which regulate insurance when an ERISA plan is self-funded. 29 U.S.C. § 1144(b)(2)(B) (the "deemer" clause).[3] In *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the Supreme Court held that ERISA preempted application of state insurance law to a self-funded ERISA plan. In *Lincoln Mut. Cas. Co. v. Lectron Products, Inc. Employee Health Ben. Plan,* 970 F.2d 206 (6th Cir.1992), the Sixth Circuit held that ERISA preempted the application of the Michigan No–Fault Act to a self-funded ERISA benefit plan. Therefore, ERISA preempts the application of the Michigan No–Fault Act to this action.

### B. Review of Plan Interpretation

The Company argues that under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), this court must defer to the Company's interpretation of the Plan because the Plan provides the administrators with broad discretion in construing the terms of the plan. The Plan clearly provides sufficient discretionary authority to the administrators to construe the terms of the Plan. The Plan grants the administrators the power:

> *Group Services* held otherwise, it "is no longer viable in light of *FMC.*"

**3.** Wall argues that the Insurance Company's disability plan is not self-funded. However, because the Insurance Company only seeks recovery of medical benefits, the fact that the disability plan is not self-funded is irrelevant.

to interpret and construe the Plan, including but not limited to the power to determine all questions with regard to employment, eligibility, earnings, coverage, benefits, and such factual matters such factual matters as date of birth and marital status, and similarly related matters for the purpose of the Plan, and the committee's determination of all questions arising under the Plan shall be conclusive upon all persons, the Employer and other interested persons.

The Plan, Section 13.4(a), Plaintiff's motion for summary judgment, exhibit 1. Therefore, the decision of the administrators can only be overturned if it is arbitrary and capricious. However, the decision of the administrators was to pay Wall's medical benefits. The Plan and the administrators are not parties to this action seeking reimbursement from Wall for the medical benefits. The terms of the Plan provide that the administrators are the members of the Security Plan Committee:

*Appointment and Removal of Security Plan Committee*—The administration of the Plan shall be vested in the Security Plan Committee, the members of which shall be appointed by the Board. The Board may remove or replace any member of the committee at any time in its sole discretion, and any committee member may resign by delivering his written resignation to the Board, which resignation shall become effective upon its delivery or at any later date specified therein.

No term in the Plan provides that the Company is the administrator of the Plan. In the instant action, the Plan paid medical benefits to Wall and the Company now seeks reimbursement from Wall for those payments. There is no indication in the documents that the administrators have provided the interpretation of the Plan being asserted by the Company in this action. Therefore, the court will review the Company's interpretation of the Plan *de novo*.

### C. Section 12.4: Subrogation

The Company argues that the following subrogation clause in the Plan document permits recovery from the $100,000 settlement which Wall received from Harquist's insurance company. Section 12.4 of the Plan provides:

*Subrogation*—In the event of any payment of medical or disability benefits under this Plan, the Employer shall, to the extent of such payment, be subrogated to all rights of recovery of the individual receiving such benefits under this Plan against any insurance carriers or any third party(ies) who may be liable for expenses paid under the Plan. Any Covered Person claiming benefits under the Plan shall execute and deliver such instruments as may be required and do whatever else is necessary to secure such rights to the Employer.

Wall argues that the Company is not entitled to subrogate against the $100,000 tort liability settlement she received from Harquist's insurer because Harquist was not "liable for expenses under the Plan." Wall argues that Harquist was not liable for Wall's medical expenses because Mich.Comp.Laws Ann. § 500.3135 abolished tort liability for economic losses such as medical expenses and wage loss. Therefore, Wall argues that the settlement only compensated her for pain and suffering. The Company does not argue that Harquist was liable for the medical benefits provided by the Plan.

The Company argues that it can recover from Wall's settlement with Harquist because an ERISA plan is entitled to subrogation from a third party recovery even if the recovery is classified as pain and suffering. The Company relies on *Fons v. Hotel Employees International Union*, 1991 WL 340288 (E.D.Mich.1991), in which the court upheld an ERISA plan administrator's determination that the ERISA plan was subrogated to the plan participant's third party recovery. Unlike the present action, the *Fons* case involved a plan participant's declaratory action against an ERISA plan. The ERISA plan's interpretation of the Plan language was reviewed under the arbitrary and capricious standard of review because the Plan granted the administrators of the Plan discretion in interpreting Plan terms. In *Fons*, the court stated that "Without determining which party has misconstrued the plan's language, this Court concludes that the trustees'

actions were not arbitrary and capricious." *Id.* at 6.

There is also a distinction between the ERISA plan's language in *Fons* and the Plan language in the instant action. The subrogation provision in *Fons* did not limit the plan's subrogation to expenses for which the plan was liable. The rights of the Company are limited by the language in the Plan. *U.S. Healthcare, Inc. v. O'Brien*, 868 F.Supp. 607 (S.D.N.Y.1994) (ERISA plan's subrogation rights are limited by the subrogation provision in the plan). In *Fons,* the ERISA plan stated that it was subrogated to the participant's right "to recover said amounts as damages from another person or insurance carriers." The language in the *Fons* case merely limited the ERISA plan's recovery to the monetary amount it paid to the participant. In the instant case, the Plan limits its subrogation rights to situations where the participant recovers from a third party who "may be liable for expenses under the Plan." The Plan does not define the parties who will be considered liable for expenses under the Plan. Although ERISA preempts state insurance law in this action, the court interprets the clause "who may be liable for expenses paid under the Plan" as incorporating the specific portion of state law defining the parties who are liable for expenses paid under the Plan. If the Plan had simply stated that the employer was subrogated to all rights of recovery against any third party or insurance carrier and not included the limiting language of "who may be liable for expenses paid under the Plan," the court would not have looked to state law because the terms of the Plan would preempt state law. Because the Plan did include the limiting language, the court must look to state law to determine whether Harquist was liable for expense under the Plan. Because Harquist was not liable for medical expenses under Michigan law, the Company cannot recover its medical benefits from Wall's $100,000 with Harquist's insurer.

The Company also cites a provision in the *Summary Plan Description* which provides that "the plan may share in anything you may receive from a third party." *Summary Plan Description,* paragraph XII.D., Exhibit

4. The *Summary Plan Description* explicitly states that it is not a part of the Plan. Therefore, the terms in the *Summary Plan Description* do not control the analysis in this action.

### D. Section 12.3: Reimbursement Provision

■ Section 12.3 of the Plan provides:

*Right to Recovery*—Whenever payments have been made by the Employer in a total amount which is, at any time, in excess of the maximum amount of payments to which the Covered Person is entitled under the Plan, the Employer shall have the right to recover the excess amount of such payments from any persons to or for or with respect to whom such excess payments were made.

The Company states that its "right under Section 12.3, to recover from Wall all benefits she improperly requested it to pay, is totally separate and distinct from its *Subrogation* rights under Section 12.4 of the Plan." Plaintiff's reply to defendant's brief opposing plaintiff's motion for summary judgment, at 4. The Company argues that the AAA Michigan policy should have paid Wall's medical benefits and therefore Wall was not entitled to any medical benefits under the Plan. In Section 9.1, the Plan states:

Specifically, this Plan will always pay either its regular benefit in full or a reduced amount of its regular benefit which, when added to the benefits payable by the "Other Plan(s)", will equal no more than 100% of "Allowable Expenses" incurred by the Covered Person for whom a request for benefit payment is being made. Benefits payable under an "Other Plan" include benefits that, even if not actually paid, would have been payable if the Covered Person had made a claim for benefits under that plan.

The Plan, Section 9.1, Plaintiff's motion for summary judgment, Exhibit 1. The Plan explicitly provides, in section 9.2(b)(iv), that "a plan of 'no-fault' or other automobile medical insurance will be considered to pay its benefits before this Plan."

■ Wall argues that the Michigan No-Fault Act, which provides that a health insur-

er is primarily liable and an auto insurer is secondarily responsible for medical expenses arising from auto accidents, is not pre-empted by ERISA. Wall cites *Federal Kemper Ins. Co. v. Health Ins. Administration, Inc.,* 424 Mich. 537, 383 N.W.2d 590 (1986). The *Federal Kemper* case was explicitly overruled to the extent it conflicts with *Auto Club Ins. Assoc. v. Frederick & Herrud, Inc.,* 443 Mich. 358, 505 N.W.2d 820 (1993). In *Auto Club,* the Michigan Supreme Court held that ERISA preempts the application of the Michigan No-Fault Act to self-funded ERISA health plans and ERISA plans are not responsible for medical expense benefits when they contain a coordination of benefits clause. In *Lincoln Mut. Cas. Co. v. Lectron Products, Inc. Employee Health Ben. Plan,* 823 F.Supp. 1385 (E.D.Mich.1993) (on remand from the Sixth Circuit), the court held that a coordination of benefits clause in an ERISA plan takes precedence over a similar clause in an auto insurance policy due to ERISA preemption. In *Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.,* 31 F.3d 371 (6th Cir.1994), the Sixth Circuit also held that when a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan must be given full effect. Therefore, the Plan's provisions take precedence over any similar coordination of benefits clause in the AAA Michigan policy and AAA Michigan was primarily liable for Wall's medical expenses.

Section 12.3 provides that the Employer can recover any payments in excess of the amount that the participant is entitled to receive under the Plan. Wall was not entitled to medical benefits from the Plan because AAA Michigan should have paid those benefits. Therefore, according to Section 12.3, Wall must reimburse the Company for the medical benefits she received from the Company.

### E. Statute of Limitations

■ Wall argues that the Company's suit is barred by the statute of limitations in Mich.Comp.Laws Ann. § 500.3145. However, that statute of limitations applies to actions by insureds who seek no-fault benefits

from their auto insurers. It does not bar claims by benefit providers under an insurance contract. *Auto Club Ins. Assoc. v. New York Life Ins. Co.,* 440 Mich. 126, 485 N.W.2d 695 (1992). This claim is governed by a six year statute of limitations applicable to contract actions generally. *Id.*

### F. Equitable Doctrine of Laches

■ Wall argues that the under the doctrine of laches the Company should barred from bringing this action because Wall can no longer bring a claim against AAA Michigan. Laches is an equitable doctrine which requires a showing of an "unreasonable delay by one party which prejudiced the other party." *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1250 (6th Cir.1992). The court is extremely concerned about the inequitable situation created by the Company. Had the Plan refused to pay Wall at the time she requested her medical benefits, Wall could have brought her claim to AAA Michigan and AAA Michigan would have paid her medical benefits. Instead, the Plan paid her medical benefits and then sued Wall for reimbursement after Wall was barred from seeking medical benefits from AAA Michigan because the statute of limitations on that claim had expired. Clearly, the Company's delay in bringing this action prejudiced Wall. The Company has failed to provide any reason, such as new factual developments, which caused it to delay bringing this action. Unfortunately, laches is not available as a defense against claims brought under law, as in the instant action. *U.S. v. Robbins,* 819 F.Supp. 672, 674 (E.D.Mich.). Therefore, the court cannot grant the defendant's motion based on the doctrine of laches. The court does note that statute of limitations, such as the one year statute of limitations limiting Wall's action against AAA Michigan, may be tolled. Unfortunately, the court cannot address that issue because AAA Michigan is not a party to this action.

### *ORDER*

Therefore, it is hereby **ORDERED** that plaintiff's motion for summary judgment is **GRANTED.**

It is further **ORDERED** that defendant's motion for summary judgment is **DENIED.**

**SO ORDERED.**