**NALC HEALTH BENEFIT PLAN, Plaintiff,**

v.

**Vicki LUNSFORD, Defendant/Third–Party Plaintiff,**

v.

**STATE FARM INSURANCE, Third–Party Defendant.**

No. 94–CV–73668–DT.

United States District Court, E.D. Michigan, Southern Division.

March 21, 1995.

---

John C. Adam, Southfield, MI, Babette A. Ceccotti, New York City, Steven B. Gailbraith, Laura Phillips, Southfield, MI, for plaintiff.

Richard E. Moblo, Novi, MI, for defendant.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On June 5, 1995, the Plaintiff, NALC Health Benefit Plan (NHBP) filed a motion for summary judgment against the Defendant/Third Party Plaintiff, Vicki Lunsford. On the following day, another motion for summary judgment was filed against her by the Third Party Defendant, State Farm Insurance (State Farm). In Lunsford's responsive pleadings, she has expressed her opposition to NHBP's motion in part and to State Farm's motion in its entirety.

For the reasons that have been set forth below, NHBP's motion will be granted. However, State Farm's motion must be denied.

### I.

This controversy arises from Lunsford's attempt to obtain replacement insurance benefits from State Farm in the event that she is obligated to reimburse NHBP for the insurance benefits that it had paid to her.

NHBP, a federal employees health benefit plan, is sponsored by the National Association of Letter Carriers and established by contract with the United States Office of Personnel Management pursuant to the Federal Employees Health Benefit Act, 5 U.S.C. § 8901 et seq. (FEHBA). This health benefit plan (Plan) contains a provision which, in general, requires all enrollees to reimburse it with any funds that are subsequently ob-

tained from a third party as a result of a lawsuit, settlement, or otherwise.[1]

On October 21, 1992, Lunsford, while enrolled in the Plan, was injured in an automobile accident. She was also insured through her insurance policy with State Farm at the same time. Following the accident, Lunsford was able to recover (1) $12,704.79 in benefits from NHBP and (2) $20,000 as the result of a settlement from another carrier who had insured the "other driver." Thereafter, NHBP asked Lunsford for a reimbursement of the $12,704.79 that it had paid to her as a result of the October 1992 accident. When she declined NHBP's request, this lawsuit ensued. Lunsford subsequently filed a third party complaint against State Farm whom she contended is obligated to reimburse her for any monies that are paid to NHBP.

### II.

Under Rule 56 of the Federal Rules of Civil Procedure, a summary judgment is to be entered if (1) the moving party demonstrates that there is no genuine issue as to any material fact, and (2) the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The parties concede that there are no genuine issues of a material fact in this case, leaving only questions of law to be resolved.

### A. *Lunsford's Obligations to the Plan*

#### i. *Preemption of the Plan over Michigan Law*

Congress enacted FEHBA "to protect federal employees against the high and unpredictable costs of medical care and to assure that federal employee health benefits are equivalent to those available in the private sector." *American Fed'n of Gov't Employees, AFL–CIO v. Devine*, 525 F.Supp. 250, 252 (D.D.C.1981).[2] This statute regu-

---

1. This health benefit plan also contains a subrogation provision which entitles NHBP to pursue any claims that its enrollees may have against third parties for the recovery of accident-related damages.

2. FEHBA is administered by the United States Office of Personnel Management (OPM). *Kobleur v. Group Hosp. & Medical Serv.*, 954 F.2d 705, 707 (11th Cir.1992).

lates all aspects of federal employee health benefit plans, notwithstanding any incompatible state law provisions. 5 U.S.C. § 8901 *et seq.* FEHBA states:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) **shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.**

5 U.S.C. § 8902(m)(1) (emphasis added). Thus, this statute is "the exclusive source of [a federal] employee's compensation rights." *Kizas v. Webster,* 707 F.2d 524, 536 (D.C.Cir. 1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).[3]

By definition, the reimbursement provision within this Plan "relate[s] to the nature or extent of coverage or benefits." Therefore, this reimbursement provision preempts any incompatible state law, including Michigan law, and is enforceable in a court of law.[4]

### ii. *Amount of Reimbursement*

The terms of the FEHBA plans are enforceable as written, in order to "advance[ ] the federal interest in uniformity and Congress' purposes in enacting the FEHB Act." *Medcenters Health Care, Inc. v. Ochs,* 854 F.Supp. 589, 594 (E.D.Minn.1993), *aff'd,* 26 F.3d 865 (8th Cir.1994). Hence, the provision within this Plan, which requires all enrollees to reimburse the NHBP from any third-party proceeds, is legally enforceable.[5]

Lunsford submits that 20 C.F.R. § 10.503(a)–(c) limits the amount of the reimbursement that NHBP can demand from her.[6] However, this statute was enacted pursuant to the federal worker's compensation program which had been established by the Federal Employee's Compensation Act, 5 U.S.C. § 8101 *et seq* (FECA)—not FEHBA, as she contends. *See Ostrowski v. Dep't of Labor,* 653 F.2d 229, 230 (6th Cir.1981). Inasmuch as there is no comparable regulation within the FEHBA scheme, and in the absence of any authority which suggests that the FECA regulation applies to FEHBA cases, Lunsford's arguments must be rejected.

---

**3.** FEHBA's broad preemptive effect has been acknowledged by a number of courts. *See Burkey v. Government Employees Hosp. Ass'n,* 983 F.2d 656 (5th Cir.1993); *Hayes v. Prudential Ins. Co. of America,* 819 F.2d 921 (9th Cir.1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988); *Myers v. United States,* 767 F.2d 1072 (4th Cir.1985); *Tackitt v. Prudential Ins. Co.,* 758 F.2d 1572 (11th Cir.1985); *Fodera v. State Farm Ins.,* No. 92–CV–73639, slip op. at 2–3 (E.D.Mich. June 21, 1993); *Citizens Ins. Co. v. APWU Health Plan,* No. 91–CV–106, slip op. at 3 (W.D.Mich. December 13, 1991); .*LaBelle v. Blue Cross & Blue Shield United Wisconsin,* 548 F.Supp. 251 (W.D.Wisc.1982); *Sibley v. DAIIE,* 431 Mich. 164, 427 N.W.2d 528 (1988).

**4.** Initially, Lunsford refused to comply with NHBP's demand for reimbursement, claiming that the Michigan "No Fault Motor Vehicle Liability Act," Mich.Comp.Laws § 500.3116, precluded it from subtracting any benefits from her as the result of a third party tort recovery. However, with recognition that the federal law in this area preempts any incompatible state law provisions, she has now withdrawn this objection.

State Farm contends that its policy and NHBP's policy are inconsistent because each of them contain coordination of benefits clauses. Thus, State Farm posits that any award of bene-

fits to Lunsford should be shared equally with the NHBP. This argument is without merit in light of federal preemption.

**5.** This health benefit plan states in pertinent part as follows:

> If you or your covered dependent suffers an injury or illness through the act or omission of another, the Plan requires that it be reimbursed for benefits paid by the Plan in an amount not to exceed the amount of recovery, or that it be subrogated to your (or your dependent's) rights to the extent the benefits paid, including the right to bring suit. All recoveries from a third party (whether by lawsuit, settlement or otherwise) must be used to reimburse the Plan for benefits paid. The Plan's share of the recovery will not be reduced because you or your dependent do not receive the full amount of damages claimed, unless the Plan agrees in writing to a reduction.

**6.** 20 C.F.R. § 10.503(a)–(c) allows federal employees to (1) offset the gross amount that is recovered from third parties by the amount of attorney's fees and costs incurred, and (2) retain one-fifth of the net amount of recovery. Relying upon this statute, it is Lunsford's position that she need only reimburse $9,905.43 to NHBP.

## B. *State Farm's Obligations to Lunsford*

### i. *Coordination of Benefits*

■ State Farm maintains that it, being an excess insurer for Lunsford at the time of the accident, should not be required to pay her primary benefits. State Farm asserts that it will be forced to assume the role of a primary carrier, rather than an excess insurer if this Court adopts Lunsford's position. This argument is without merit.

In 1988, the Michigan Supreme Court determined that those employees, who are subject to a federal plan reimbursement rule, can rely upon their no-fault insurer to make them whole, regardless of whether the federal plan is the primary plan. *See Sibley v. DAIIE,* 431 Mich. 164, 427 N.W.2d 528 (1988).

In *Sibley,* the plaintiff filed two claims for the injuries that he sustained as the result of an automobile accident. In his first claim, he obtained monies from his worker's compensation carrier under a FECA plan. However, the Detroit Automobile Inter–Insurance Exchange (D.A.I.I.E.), a Michigan insurance company against whom the plaintiff's second claim had been made, deducted the amount that he had received under the FECA plan on the basis of the provisions of Mich.Comp. Laws § 500.3109(1), which required no-fault carriers to subtract any "benefits provided" from the award under another plan.[7] Faced with this off-set of benefits, the plaintiff challenged this decision by the D.A.I.I.E. in a lawsuit. The court agreed with the plaintiff, holding that the deduction of the monies that he had received under the FECA plan was impermissible because these funds did not constitute "benefits provided," as required by the Michigan statute:

> [T]o the extent that the reduction in the automobile insurer's responsibility is from a source that retrieves reimbursement from the injured person's tort recovery, the amount so retrieved should not be deemed "benefits provided" within the meaning of the automobile no-fault act....

*Id.* at 169, 427 N.W.2d 528. Thus, the effect of *Sibley* was to declare that any monies, which had been obtained by an aggrieved person under this federal plan and subject to reimbursement, are only temporary benefits and cannot be used to offset the financial obligation of the no-fault carrier.

State Farm submits that *Sibley* is inapposite to the instant matter, noting that the D.A.I.I.E. had the primary responsibility to pay full benefits to the insured without reduction. *Id.* However, *Sibley* is much broader than State Farm has argued. In *Sibley,* the court redefined the parameters of a "benefit received or provided" under the Michigan "No–Fault Motor Vehicle Liability Act," holding that those benefits, which are reimbursed to a federal plan, are no benefits at all. *Id.* In fact, a reading of the entire opinion reveals that the main concern of the *Sibley* court was the effect, if any, of the reimbursement provision on the injured party rather than on the no-fault carrier:

> Because the reimbursement here is provided for by federal law, which preempts state law, we cannot ... bar the alternative source (the federal government) from recovering against and from the tort recovery what it paid the injured worker. **In fairness, however, in order to prevent a worker injured in an automobile accident from, in effect, paying for his own work loss/medical benefits, we can require the automobile no-fault insurer to repay benefits to that extent,** in order to effectuate the underlying policies of the automobile no-fault act.
>
> . . . .
>
> **We are persuaded that when the automobile no-fault speaks of benefits "provided," it means benefits permanently provided by alternative sources pursuant to state or federal law.**
>
> **Because plaintiff was ultimately required to refund the FECA benefits he had received, he was left without compensation for his medical services and lost wages. Therefore, his only recourse**

---

7. Mich.Comp.Laws 500.3109(1) states that "benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury."

for economic damages was to seek payment from his no-fault carrier.

*Id.* at 170–71, 427 N.W.2d 528 (emphasis added).

■ State Farm's argument that it was only an excess insurer lacks merit as well. It is common for insurance companies to coordinate benefits with other carriers for the purpose of allocating their respective risks of liability. The coordination of benefits is generally achieved by including "other insurance" clauses in their policies. *St. Paul Ins. v. American Home*, 444 Mich. 560, 564, 514 N.W.2d 113 (1994). However, such "other insurance" clauses only absolve the carrier from liability when the "other insurance" provides benefits in the manner that is explained by the Michigan Supreme Court:

> "[O]ther insurance" clauses fall into three general categories. The effect of each in the event of concurrent coverage is to reduce the insurer's loss. They are:
>
> 1. A pro-rata clause, which purports to limit the insurer's liability to a proportionate percentage of **all insurance covering the event;**
>
> 2. An escape or no-liability clause, which provides that there shall be no liability **if the risk is covered by other insurance;** and
>
> 3. An excess clause, which limits the insurer's liability to the amount of loss **in excess of the coverage provided by the other insurance.**

*Id.* at 565, 514 N.W.2d 113 (*quoting Federal Kemper Ins. Co., Inc. v. Health Ins. Administration, Inc.,* 424 Mich. 537, 542, 383 N.W.2d 590 (1986)) (emphasis added).

8. Mich.Comp.Laws § 500.3145 provides as follows:

An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year

The coordination of benefits upon which State Farm relies in this case is available only to the extent that the risk is covered or provided in the "other insurance." Inasmuch as *Sibley* has held that temporary benefits do not permanently provide for the risk of an injury or loss when there is a third-party recovery, the FEHBA plans, and other similar federal plans, do not constitute "other insurance" for the purpose of coordination of benefits to the extent that a reimbursement of funds is a legally enforceable obligation. Accordingly, State Farm's "excess insurance" argument must fail because no permanent coverage was provided by the health benefit plan.

### ii. *Statute of Limitations*

■ State Farm also advances the position that Lunsford's claim is barred by the statute of limitations of the Michigan "No Fault Motor Vehicle Liability Act," Mich.Comp. Laws § 500.3145, which requires an insured to initiate legal proceedings for claims under the insurance policy within one year of the date of the loss.[8] State Farm maintains that this statute precludes Lunsford from pursuing this claim, noting that she had incurred her medical bills prior to October 21, 1993, more than one year from the date of the filing of this lawsuit.

State Farm's position must be rejected. In *Sibley,* the Michigan Supreme Court refused to apply the state "No Fault Motor Vehicle Liability Act" to those circumstances which, like the case at bar, were seemingly covered by the statute. The court, acknowledging that the no-fault scheme had neither been anticipated nor intended to regulate the conflicts in coverage which arose from the operation of federal plans, declared:

after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone on his behalf. The notice shall give the name and address of the claiming and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

We are confronted here with legislation conferring on the payor of worker's compensation benefits a right of complete recovery out of the worker's tort recovery—a situation not specifically dealt with or contemplated by our Legislature when it crafted our no-fault scheme.

*Sibley,* 431 Mich. at 169, 427 N.W.2d 528. Thus, it is clear to this Court that, when drafting the Michigan "No Fault Motor Vehicle Liability Act," including its statute of limitations, the state Legislature neither anticipated nor considered the fact that, due to the federal scheme of reimbursement, federal employees would have no standing to seek or sue their no-fault carriers for benefits until they had recovered and reimbursed the federal plans with their third-party proceeds.

Moreover, the application of the Michigan "No Fault Motor Vehicle Liability Act" in the instant controversy would defeat the goal of the Michigan Supreme Court of "prevent[ing] a worker injured in an automobile accident from, in effect, paying for his own work loss/medical benefits." *Id.* at 171, 427 N.W.2d 528. Thus, the applicability of the one year statute of limitations provision within the Michigan "No Fault Motor Vehicle Liability Act," to the situation in this case must be rejected.

### III.

Based on the foregoing, (1) NHBP's Motion for Summary Judgment is granted and (2) State Farm's Motion for Summary Judgment is denied.

IT IS SO ORDERED.