RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0004P (6th Cir.)
File Name: 01a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AMERICAN MEDICAL
SECURITY, INC.,
          *Plaintiff-Appellant*,

          *v.*

AUTO CLUB INSURANCE
ASSOCIATION OF MICHIGAN,
          *Defendant-Appellee*.

Nos. 98-1973;
99-2110

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-75632—Avern Cohn, District Judge.

Argued: October 25, 2000

Decided and Filed: January 4, 2001

Before: DAUGHTREY and CLAY, Circuit Judges;
RUSSELL, District Judge.[*]

_____

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:** Lauren J. Hammett, FISCHER, FRANKLIN & FORD, Detroit, Michigan, for Appellant.    Steven G. Silverman, GROSS, NEMETH & SILVERMAN, Detroit, Michigan, for Appellee. **ON BRIEF:** Lauren J. Hammett, Arthur J. LeVasseur, FISCHER, FRANKLIN & FORD, Detroit, Michigan, for Appellant.    Steven G. Silverman, GROSS, NEMETH & SILVERMAN, Detroit, Michigan, for Appellee.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.    This is a consolidated appeal wherein Plaintiff, American Medical Security Inc. ("AMS"), appeals from two separate judgments entered by the United States District Court for the Eastern District of Michigan granting summary judgment to Defendant, Auto Club Insurance Association of Michigan ("AAA"), while denying summary judgment to Plaintiff, regarding Plaintiff's claims involving payment of benefits.

Specifically, in **Case No. 98-1973**, Plaintiff appeals from the district court's judgment entered on August 4, 1998, granting summary judgment to Defendant as to the claims for reimbursement pursued by Plaintiff as subrogee to Peter C. Coan and Jerry Williamson.  The district court found that as a matter of law, Plaintiff's suit was time barred by the "one-year back" rule under Michigan's No-Fault Insurance Act, Mich. Comp. Laws Ann. § 500.3145.  In **Case No. 99-2110**, Plaintiff appeals from the district court's judgment entered on September 9, 1999, granting summary judgment to Defendant as to the claim for reimbursement pursued by Plaintiff as subrogee to Andrea Teagan.  The district court found that the relevant Michigan statute was not preempted by the

**98-1973** as well as in **Case No. 99-2110**, and we therefore **AFFIRM** the district court's orders in both cases.

Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a); that Michigan's No-Fault Act therefore applied; and that under Michigan's "*Federal Kemper*" rule, Plaintiff was the primary insurer.

By order of this Court, the two cases, which were heard before the same district judge, were consolidated on appeal, and we now **AFFIRM** the district court's judgment in both cases. We have jurisdiction over the matter pursuant to 28 U.S.C. § 1331, inasmuch as Plaintiff's claims arose under 29 U.S.C. § 1132(a)(1)(B) of ERISA.

## BACKGROUND

This case involves a dispute over which of two potential insurance providers – Plaintiff, American Medical Security, Inc., which is the third-party administrator of ERISA-governed employee welfare benefit plans; or Defendant, Automobile Club Insurance Association, which is a Michigan no-fault automobile insurer – is responsible for the payment of medical expenses paid on behalf of three individuals for injuries that they received when each was involved in separate automobile accidents. The facts relevant to each case are as follows.

### A.    Case No. 98-1973

On April 26, 1992, Peter C. Coan was injured in an automobile accident. At the time of the accident, Coan was employed by Daniels Glass Co., Inc., and was a participant in its employee benefit plan. Plaintiff, the third-party administrator of the plan, paid out $197,857.85 for medical expenses Coan incurred as a result of the automobile accident.

On April 13, 1993, Jerry Williamson was injured in an automobile accident. At the time of the accident, Williamson worked for C&M Masonry and was a participant in its employee benefit plan. Plaintiff was the third party administrator of the plan and paid out $8,239.38 for medical expenses that Williamson incurred as a result of the accident.

At the time of the accidents, Coan and Williamson each had a valid policy of no-fault insurance with Defendant AAA that included a provision for coordinated coverage. The provision provided as follows:

> If the Declaration Certificate shows "COORDINATED MEDICAL BENEFITS," it is agreed that all other medical insurance or health care benefit plans available to you . . . are your primary source of protection.

(J.A. at 409, 435.) The subject Certificates of Group Insurance administered by Plaintiff AMS provide excess coverage as follows:

> **EXCESS COVERAGE**
> No benefits are payable for Injury or Sickness for which there is other insurance providing medical payments or medical expense coverage, regardless of whether the other coverage is primary, excess, or contingent. If We make payment on Your behalf, You agree to assign to Us any right You have against the other insurer.

(J.A. at 97, 161, 579, 612, 637.)

Plaintiff sought reimbursement from Defendant for the medical expenses that it had paid out on behalf of Coan in a letter dated December 29, 1995. After Defendant orally invoked the "one-year back" rule of Michigan's No-Fault Act, Mich. Comp. Laws Ann. § 500.3145, to deny Plaintiff's request, Plaintiff sent another letter to Defendant dated November 15, 1996, again requesting reimbursement. Thereafter, in a letter dated February 26, 1997, Defendant reiterated its earlier denial of Plaintiff's request once again citing the "one-year back" rule as the basis for doing so.

As a result of Defendant's denial of Plaintiff's requests for reimbursement, Plaintiff filed suit against Defendant on November 12, 1997, in the United States District Court for the Eastern District of Michigan. On April 27, 1998, Plaintiff filed a motion for summary judgment; on May 27, 1998,

ERISA plans are generally sheltered from state insurance regulation," but because the plan at issue was not self-funded, it was subject to § 3109a); *Progressive Mich. Ins. Co. v. United Wisc. Life Ins. Co.*, 84 F. Supp. 2d 848, 853 (E.D. Mich. 2000) ("In sum, § 3109 of Michigan's no-fault law is 'saved' under ERISA's saving clause. Accordingly, Michigan law, not federal law, governs this priority dispute. . . . Moreover, because the ERISA plan at issue here is funded by an insurance policy as opposed to being self-funded, ERISA's deemer clause will not exempt the plan from § 3019a of Michigan's no-fault law."); *Am. Med. Sec., Inc. v. State Farm Auto. Ins.*, 82 F. Supp. 2d 717, 719 (E.D. Mich. 2000) (finding that ERISA did not preempt § 3109a, and that the plaintiff medical insurer, which again was AMS, was therefore primarily liable for the insured's medical expenses while the insured's no-fault provider was secondarily liable).

### 3. Application of § 3109a or Michigan's *Federal Kemper* Rule

Because Michigan's no-fault law is not preempted under the facts of this case, the district court properly concluded that Plaintiff is the primary insurer. Under Michigan law, where no-fault coverage and health care coverage are coordinated, as in the case at hand, the health insurer is primarily liable for the insured's medical expenses. *See* MICH. COMP. LAWS ANN. § 500.3109a; *Federal Kemper*, 383 N.W.2d at 596. Therefore, the insured ERISA plan at issue is primarily responsible for Andrea's medical expenses, and likewise in the case of Coan and Williamson, resulting from the separate automobile accidents in which these insured individuals were involved.

### CONCLUSION

For the above stated reasons, we hold that the district court properly granted summary judgment to Defendant, and properly denied summary judgment to Plaintiff, in **Case No.**

*Id.* at 210.  Simply put, *Lincoln Mutual* held that because the ERISA plan was self-funded, Michigan's no-fault laws were preempted.  *See id.*; *see also Auto Club Ins. Assoc. v. Health and Welfare Plans*, 961 F.2d 588, 593 (6th Cir. 1992) (holding that "self-insured ERISA plans, including self-insured ERISA plans containing coordination of benefits clauses, are not reached by 500.3109a"); *Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.,* 505 N.W.2d 820, 834 (Mich. 1993) (overruling *Federal Kemper* only to the extent that the *Federal Kemper* Rule did not apply to self-funded plans, while couching its decision as a "narrow holding"); *Am. Med. Sec., Inc. v. Allstate Ins. Co.,* 597 N.W.2d 244, 247 (Mich. Ct. App. 1999) (finding that because the plan at issue was not self-funded, § 3109a applied).  *Cf. Auto Owners Ins. Co. v. Thorn Apple Valley*, 31 F.3d 371, 374 (6th Cir. 1994) (stating that "when a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan including its COB clause, must be given full effect").

Although this Court has not squarely addressed the primacy of coverage issue between a coordinated no-fault policy and an insurance policy purchased by an ERISA plan, we believe that the jurisprudence relating to this issue clearly indicates that § 3109a is not preempted under such circumstances. This Court has already found that § 3109a "regulates" insurance for purposes of the savings clause, *see Northern Group*, 833 F.2d at 89-90; *Northern Group* has not been overruled as to this finding; and, because the plan at issue is not self-funded, the deemer clause does not override the savings clause, thereby subjecting the plan to state regulation.  *See FMC Corp.*, 498 U.S. at 61.

This same conclusion has been similarly reached in the Michigan federal district courts that have considered the issue.  *See Citizens Ins. Co. of Am. v. Am. Med. Sec., Inc.*, 92 F. Supp. 2d 663, 668-71 (W.D. Mich. 2000) (finding that "[b]ecause the deemer clause prevents a state from deeming an ERISA plan to be an insurance company, self-insured

Defendant filed an answer to Plaintiff's motion for summary judgment in the nature of a cross-motion for summary judgment.  Thereafter, on August 4, 1998, the district court issued a Memorandum and Order wherein the court concluded that the "one-year back" rule was applicable based upon the Michigan Supreme Court's decision in *Auto Club Insurance Association v. New York Life Ins. Co.*, 485 N.W.2d 695 (Mich. 1992).  Accordingly, the court denied Plaintiff's motion for summary judgment while granting Defendant's cross-motion for summary judgment.  The court opined in relevant part as follows:

> The logical extension of *New York Life* is that (1) when AMS [Plaintiff] sued AAA [Defendant] for reimbursement, arguing that it was secondarily liable, it essentially asserted subrogation; (2) AMS is therefore subrogated to the claims of Coan and Williamson; and (3) AMS must therefore abide by the one-year back rule, which limits Coan and Williamson's right to recovery. Because AMS sought reimbursement more than one year after the most recent allowable expenses, it cannot now bring these claims against AAA.

(J.A. at 471.)

**B.  Case No. 99-2110**

On July 8, 1994, Andrea Teagan was injured in an automobile accident.  Andrea is the daughter of Lillian Tull and, at the time of her accident, Andrea was covered under her mother's employee benefit plan sponsored by Temp West, Inc.  Plaintiff was the third-party administrator of the plan.

Effective May 25, 1992, and through the date of the accident, Defendant insured Tull under an automobile policy which provided coordinated no-fault medical coverage to Tull and Andrea. Shortly after the July 8, 1994, accident, Tull informed Defendant that Andrea was covered by Tull's ERISA health insurance plan administered by Plaintiff.  On

July 22, 1994, Defendant verified with Plaintiff that Tull's health insurance was in effect and covered Andrea.

By way of letter dated July 28, 1994, Defendant informed Tull that because she had purchased coordinated medical benefits coverage from Defendant, she was required to submit all medical bills to her health and accident insurer first; that Defendant would consider payment of expenses which her health and accident insurer rejected; and that Tull had one year from the date of any medical treatment to submit bills to Defendant. Between July 8, 1994 and July 31, 1996, Plaintiff paid out $174,282.51 to cover the cost of the medical expenses incurred by Andrea as a result of the accident.

In a letter dated February 27, 1995, from Plaintiff's subrogation recovery vendor, Thomas Wilkes, Plaintiff requested reimbursement from Defendant for the amounts paid out on behalf of Andrea. Specifically, the letter provided in part as follows:

Please be advised that we are the authorized subrogation recovery vendor for American Medical Security Insurance Company in regards to the above-captioned insured, Andrea Teagan.

Our subrogation lien is $104,151.88 and is not a final lien amount. I have enclosed documentation supporting the current lien amount as well as our subrogation, coordination of benefits, and assignment language. We are processing more payments as this letter is being sent.

(J.A. at 857.) In a subsequent telephone conversation on March 14, 1995, between Wilkes and Defendant's Claims Supervisor, Kay Nichols, Wilkes requested that Defendant pay "seventy-five cents on the dollar" to settle Plaintiff's subrogation claim. Nichols explained Michigan's no-fault insurance coverage to Wilkes, and advised that if Defendant was primarily liable, Defendant would reimburse Plaintiff one-hundred percent.

regulate insured plans indirectly by regulating the insurer and its contracts. *See id*. at 63-64 (noting that "the saving clause retains the independent effect of protecting state insurance regulation of insurance contracts purchased by employee benefit plans"). The Court focused on the deemer clause in making this determination, and opined as follows:

We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. . . . On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation. An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

*Id.* at 61 (alteration in original).

Following the Supreme Court's lead, this Court observed that *self-funded* ERISA plans are to be distinguished from *insured* plans when applying ERISA's deemer clause, and therefore concluded that ERISA's deemer clause would exempt the uninsured ERISA plan from Michigan's § 3109a. *See Lincoln Mut. Cas. Co. v. Lectron Prods., Inc.*, 970 F.2d 206, 209 (6th Cir. 1992). Specifically, this Court held that:

Upon review of the facts in the instant case, we conclude that Mich. Comp. Laws § 500.3109a, as it relates to the [instant self-funded] Plan, is not "saved" under the insurance regulation exception to preemption because, under the "deemer" clause, the Plan is "'deemed' not to be an insurance company for purposes of state laws," such as § 3109a, that purport to regulate insurance contracts.

risk; 2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and 3) whether the practice is limited to entities within the insurance industry. *See id.* However, the Supreme Court has qualified this three-factor inquiry, finding that a state regulation need not satisfy all three McCarran-Ferguson factors in order to regulate insurance under ERISA's savings clause. *See id*. at 373.

As applied to § 3109a, this Court has already spoken as to whether this provision regulates insurance for purposes of the savings clause. Specifically, in *Northern Group Services, Inc., v. Auto Owners Insurance Co.*, this Court had occasion to determine whether § 3109a was preempted under ERISA under the jurisprudential principles noted above, and found as follows:

> [T]he Michigan coordination of benefits law controls the terms of the insurance contracts. The Michigan law clearly "regulates insurance" within the meaning of the savings clause. This conclusion comports both with a common sense view of the statutory language and with a more formal assessment that the practice falls within the meaning of "business of insurance" covered by the McCarran-Ferguson Act.

833 F.2d 85, 89-90 (6th Cir. 1987). The Court went on to determine that the deemer clause did not override the savings clause as applied to § 3109a, even when the plan at issue was self-funded. *See id*. at 95.

Shortly after *Northern Group* was decided, the United States Supreme Court effectively overruled *Northern Group,* but only as applied to self-funded plans. *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990). Specifically, in *FMC Corp.*, the Supreme Court held that ERISA preempts all state regulation of self-funded ERISA employee welfare benefit plans; at the same time, however, the Court distinguished those plans that are insured, and found that the state may

Wilkes sent a letter dated March 29, 1995, to Nichols, and enclosed a copy of Plaintiff's entire policy therewith, citing several portions of that policy to support Plaintiff's claim, and requested prompt reimbursement from Defendant to avoid litigation. Subsequently, Defendant's claims staff reviewed Plaintiff's policy to ascertain whether Plaintiff was primarily liable for Andrea's medical expenses.

By way of letter dated May 11, 1995, Defendant forwarded Plaintiff's ERISA plan and Wilkes' March 29, 1995, letter to Attorney Elaine I. Harding of Defendant's legal staff, and requested her opinion as to whether Plaintiff was primarily liable. Harding and another attorney in Defendant's legal department, Chris Hoehn, reviewed Plaintiff's ERISA plan and concluded that Plaintiff was primarily liable for Andrea's medical expenses. On or about June 28, 1995, Wilkes professed to Harding that Defendant owed fifty percent of the medical benefits that Plaintiff was paying, and that Wilkes would send Harding case law in support of his position.

On or about June 29, 1995, Defendant's policy which covered Andrea as well as a copy of Michigan's statutory "one-year back" provision were faxed to Wilkes; Wilkes then informed Harding that he was researching the issue, but that he thought Defendant owed fifty percent or nothing at all. On or about July 6, 1995, Wilkes sent Harding a facsimile containing the following:

(a)   A fax cover sheet written by Mr. Wilkes, which referred to the enclosed "authority we have to proceed with a 'dec action' to resolve this matter," and which offered "one last chance to settle this" claim; and

(b)   A 5-page letter, which explained AMS's position that AAA was primarily liable, or at least 50% liable.

(J.A. at 851, 860-65.)

Thereafter, various facsimile and verbal communications were exchanged between Wilkes and Harding from August of 1995, to September of 1995. In September of 1995, Harding drafted a letter on behalf of Defendant to Wilkes, which memorialized Defendant's previous denials of Plaintiff's reimbursement claim. On or about October 16, 1995, Wilkes responded and informed Harding that Plaintiff would settle for $15,000 or "whatever;" Harding rejected Wilkes' offer. Thereafter, Harding had no further contact with Wilkes concerning Plaintiff's reimbursement for Andrea's medical expenses, nor received any other communications regarding the matter, until Plaintiff's attorneys became involved.

In September of 1995, Defendant decided to pay Tull's insurance premium for Tull's COBRA conversion policy to extend Andrea's health insurance coverage with Plaintiff from August 1, 1995, to July 31, 1996. Defendant claims that it did so in order to maintain Plaintiff's status as primary payor of Andrea's medical expenses. On October 31, 1995, Defendant issued a check to Plaintiff in the amount of $4,218.56 as payment for the first year's premium on Tull's conversion policy. On August 19, 1996, Defendant issued a check to Plaintiff as payment for the second year's premium for Tull's COBRA conversion policy. However, Plaintiff returned Defendant's $6,331.08 payment, and terminated Tull's health insurance coverage effective August 1, 1996.

On about March 18, 1997, Defendant was advised that the matter was now being handled by Plaintiff's legal counsel. After an exchange of letters and other documents such as insurance plans and case law, Defendant once again advised Plaintiff's attorneys that it was denying Plaintiff's reimbursement claim during a March 6, 1998, telephone conversation.

Subsequently, on April 27, 1998, Plaintiff filed a lawsuit against Defendant regarding its claim for payments made on behalf of Andrea. On July 16, 1998, the district court entered an order consolidating this case with the case that Plaintiff

insurance company or other insurer, bank, trust company or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).

### 2.   Whether § 3109(a) is Preempted in the Matter at Hand

Plaintiff claims that the determination of whether § 3109a is preempted is not based upon whether the plan at issue is self-funded, but on the state law itself. Plaintiff contends that the *Federal Kemper* Rule does not fall within ERISA's savings clause, and argues that the district court assumed that the *Federal Kemper* Rule constituted a law regulating insurance and thus was saved from preemption without making the proper inquiry. Plaintiff concludes that upon making the proper inquiry, the *Federal Kemper* Rule cannot be considered "saved" from ERISA preemption. We disagree.

In the case at hand, there is no dispute that § 3109 "relates" to the employee benefit plans administered by Plaintiff for purposes of ERISA's preemption clause. *See* 29 U.S.C. § 1144(a). Therefore the next step in the analysis is to determine whether § 3109a "regulates" insurance for purposes of satisfying ERISA's savings clause. *See* 29 U.S.C. § 1144(b)(2)(A). This determination is made by first asking whether, from a common sense view of the matter, the provision at issue regulates insurance. *See Unum Life Ins. Co. v. Ward*, 526 U.S. 358, 367 (1999). If so, we are to consider three factors to determine whether § 3109a can be considered within the "business of insurance" as the term is used in the McCarran-Ferguson Act, 15 U.S.C. § 1101 *et seq. See id.* This involves a three-factor inquiry, 1) whether the practice has the effect of transferring or spreading a policy holder's

(1986), *overruled in part by Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.*, 505 N.W.2d 820 (Mich. 1993). As a result of this statutory requirement, *Federal Kemper* developed a priority of coverage rule such that when there is a priority dispute between a no-fault insurer which has issued a coordinated policy under § 3109a and an accident victim's other health coverage provider, both of which contain a coordination of benefits provision, the health insurer will be deemed primary. *See id.* at 596. This rule has come to be known as the *Federal Kemper* Rule.

When, as in the case at hand, the no-fault coordination of benefits provision conflicts with a coordination of benefits provision governed by ERISA, the Court must first consider whether the Michigan's no-fault law is preempted under ERISA before applying the *Federal Kemper* Rule.

## 1.   Preemption under ERISA

ERISA's preemption clause provides in relevant part that "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). ERISA's "savings clause" qualifies the preemption clause when it states that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). However, ERISA's "deemer clause," which provides as follows, may override the savings clause for purposes of preemption under ERISA's.

> Neither an employee benefit plan . . . nor any trust established under such plan, shall be deemed to be an

---

exclusions reasonably related to other health and accident coverage on the insured . . . .
MICH. COMP. LAWS ANN. § 500.3109a. (West 1993).

filed against Defendant for reimbursement of payments made on behalf of Coan and Williamson. On January 20, 1999, Plaintiff filed a motion for summary judgment; Defendant replied in the form of a cross-motion for summary judgment; and on September 9, 1999, the district court issued a Memorandum and Order wherein the court granted Defendant's motion, while denying Plaintiff's motion for the same. In doing so, the court did not address Defendant's argument that Plaintiff's suit with respect to Andrea was barred under the "one-year back" rule; instead, the court found that Defendant was secondarily liable for payment of Andrea's medical bills under Mich. Comp. Laws Ann. 500.3109a, thereby rejecting Plaintiff's claim that § 500.3109 was preempted by § 1144(a) of ERISA. Specifically, the district court opined as follows:

> Although § 3109a of Michigan's No-Fault Act "relates to" ERISA plans, it "regulates insurance" and thus is saved from ERISA preemption by the savings clause. *See Northern Group Servs., Inc. v. Auto Owners Ins. Co.*, 833 F.2d 85, 89-90 (6th Cir. 1987). *See also FMC Corp. v. Holliday*, 498 U.S. 52, 58-61 (1990); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739-46 (1985). The deemer clause does not apply here because, as AMS concedes, the plan is not self-funded. *See FMC*, 498 U.S. at 61; *UNUM Life Ins. Co. v. Ward*, ___ U.S. ___, 119 S. Ct. 1380, 1386 n.2 (1999) ("Self-insured ERISA plans . . . are generally sheltered from state insurance regulation.") Thus, because it is saved from ERISA preemption, § 3109a of Michigan's No-Fault Act applies in this case.

The Michigan Court of Appeals recently reached the same conclusion in *American Medical Security Inc. v. Allstate Ins. Co.*, ___ Mich. App. ___, 1999 WL 231661, at *2 (Apr. 20, 1999). There, AMS sued Allstate for reimbursement, and the material facts are indistinguishable from this case. The court of appeals stated:

[T]he parties agree that plaintiff's group plan qualifies as an employee welfare benefit plan under ERISA. The plan however, is clearly not self-funded, but rather has purchased insurance through United Wisconsin. The issue is whether § 3109a is preempted in a situation where the ERISA plan is not self-funded but has purchased insurance coverage. We hold that it does not.

(J.A. at 1163-64; footnote omitted.) The district court also found that under *Federal Kemper Ins. Co. v. Health Insurance Admin., Inc.,* 424 Mich. 537 (1986), Plaintiff's claim failed inasmuch as in *Federal Kemper* the Michigan Supreme Court held that when a health care plan and a no-fault insurer each seek to escape liability through competing coordination of benefits clauses, the health care plan is primarily liable and the no-fault insurer is secondarily liable.

Plaintiff filed a timely notice of appeal regarding the district court's decisions in both cases. The appeals were consolidated by order of this Court on October 8, 1999.

## DISCUSSION

This Court reviews a district court's order granting summary judgment *de novo. Equitable Life Assur. Soc'y v. Poe,* 143 F.3d 1013, 1015 (6th Cir. 1998). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A.  Case No. 98-1973 – Violation of Michigan's "One-Year Back" Rule

Plaintiff argues that the district court erred in applying Michigan's "one-year back" rule, Mich. Comp. Laws Ann. § 500.3145, on the basis that Plaintiff's claim should not be analyzed as one for subrogation under Michigan's No-Fault

reimbursed federal plans with their third-party proceeds." *Id.* at 766. Because the matter at hand does not involve a federal scheme of reimbursement, Plaintiff erroneously relies upon the limited holding of *Lundsford.*

In an alternative argument, Defendant claims that even if this Court were to ignore the district court's reasoning and characterize this case not as one for subrogation, but as one for reimbursement of ERISA-paid benefits which is contractual in nature, the "one-year back" rule would apply nonetheless because it is the more specific of two possible statutory provisions. *See* Defendant's Brief on Appeal at 31-33 (citing *Adamson v. Armco, Inc.*, 44 F.3d 650, 652 (8th Cir. 1995)). Because we agree that Plaintiff's claim is one for subrogation, we need not address Defendant's alternative argument.

Accordingly, because Plaintiff seeks reimbursement from Defendant as subrogee to Coan and Williamson, Plaintiff's claims are subject to the one-year statute of limitations set forth in § 3145. Therefore the district court did not err in granting Defendant's motion for summary judgment on this basis; however, as will be explained below, the plans which Plaintiff administers are not self-funded or preempted by ERISA such that Defendant is the secondary insurer in this matter in any event.

### B.  Case No. 99-2110 – Violation of Michigan's "*Federal Kemper*" Rule?

In *Federal Kemper Insurance Co., Inc. v. Health Insurance Administration, Inc.*, the Michigan Supreme Court opined that § 3109a "mandates that no-fault carriers offer coordination of benefits at reduced premiums when the insured has 'other health and accident coverage.'"[4]  383 N.W.2d 590, 594

---

[4] Section 3109a provides in relevant part as follows:
An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and

Act, but on the basis of an action brought under ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits. Plaintiff contends that as a § 1132(a)(1)(B) claim, the applicable statute of limitations is six years pursuant to Mich. Comp. Laws Ann. § 600.5807(8) for breach of contract disputes, as well as pursuant to Mich. Comp. Laws Ann. § 600.5813 for general personal actions.[1]

Defendant argues that the district court properly characterized Plaintiff as a subrogee to the interests of Coan and Williamson. However, Defendant also contends that whether the causes of action pleaded in Plaintiff's suits are characterized as suits to obtain benefits as subrogees, or as actions brought by Plaintiff to recover benefits under 29 U.S.C. § 1132(a)(1)(B), the district court properly granted summary judgment to Defendant due to the expiration of the period of limitation on recovery of benefits set forth in § 3145 of the Michigan No-Fault Act.[2]

It is undisputed that the suits filed by Plaintiff seeking to recover payments made on behalf of Coan and Williamson

---

[1] Section § 5807(8) provides that the "period of limitations is 6 years for all . . . actions to recover damages or sums due for breach of contract." MICH. COMP. LAWS ANN. § 600.5807(8) (West 2000). Michigan's general six-year statute of limitation period for personal actions as set forth in § 5183 provides as follows: "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes." MICH. COMP. LAWS ANN. § 600.5813 (West 2000).

[2] Michigan's one-year statute of limitations provision as set forth in § 3145 provides as follows:
An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury.
MICH. COMP. LAWS ANN. § 500.3145 (West 2000).

were filed more than one year after the last payment made by Plaintiff for medical expenses incurred by the respective parties, and that Plaintiff's claims would therefore be time barred if § 3145 applied. The dispute, in turn, centers around which statutory provision should be applied, § 3145 of Michigan's No-Fault Act, or §§ 5813, 5807(8) of Michigan's general provisions for a personal action or breach of contract claim, in determining the appropriate limitations period. We hold that § 3145 applies, thus making the applicable statute of limitations one year.

In *Federal Kemper Insurance Co. v. Western Insurance Cos.*, 293 N.W.2d 765, 767 (Mich. Ct. App. 1980), the Michigan Court of Appeals opined that "where an insurer, whose liability is arguably secondary to that of a primary insurer, pays the claim, it becomes subrogated to the rights of the insured." The court reasoned that a suit for subrogation brought by the secondary insurer against the primary insurer is the preferable method of handling the dispute inasmuch as the insured person is provided the benefits to which he is entitled, while the insurers are left to settle the liabilities. *Id.* This policy is consistent with that behind Michigan's no-fault provisions.

Moreover, the *Federal Kemper* court noted that its holding was consistent with previous decisions from the court such as *Home Insurance Co. v. Rosequin*, 282 N.W.2d 446 (Mich. Ct. App. 1979), where the court held that because an insurance company which had paid property protection insurance benefits to its insured but did not sue the defendant for subrogation within the one-year statute of limitations set forth in § 3145, its action was barred. *See Federal Kemper*, 293 N.W.2d at 768. The court observed, as did the court in *Rosequin*, that although the result may have appeared harsh, § 3145 is clear and "'plaintiff is an insurance company itself and is presumably well aware of the much-publicized insurance law of this state.'" *Id.* (quoting *Rosequin*, 282 N.W.2d at 448).

A more recent decision from the Michigan Court of Appeals provides additional guidance. In *Titan Insurance Company v. Farmers Insurance Exchange*, 615 N.W.2d 774, 775-76 (Mich. Ct. App. 2000), the court set forth the characterization of the type of case which falls under the one-year period for claims under § 3145 of Michigan's No-Fault Act. Specifically, in *Titan*, the Michigan Court of Appeals stated that those cases "in which an insurer's right to recovery or reimbursement from another insurer [is] subrogated to the insured's right to recovery[, the case is] subject to the period of limitation in § 3145" of Michigan's No-Fault Act. *See id.* at 776 (citing *Amerisure Cos. v. State Farm Mut. Auto. Ins. Co.,* 564 N.W.2d 65 (Mich. Ct. App. 1997); *Michigan Mut. Ins. Co. v. Home Mut. Ins. Co.*, 310 N.W.2d 362 (Mich. Ct. App. 1981); *Federal Kemper Ins. Co. v. Western Ins. Cos.*, 293 N.W.2d 765 (Mich. Ct. App. 1980); *Keller v. Losinski*, 285 N.W.2d 334 (Mich. Ct. App. 1979)).

Simply put, *Titan* reiterated and confirmed what the Michigan courts have consistently held: that § 3145 applies to reimbursement suits between no-fault insurers. And so it goes that in this case, where Plaintiff, as a health insurer, is seeking recovery of payments made on behalf of an insured who is also covered by Defendant, as a no-fault insurer, Plaintiff is doing so under a subrogation theory and is therefore "subject to the period of limitation in § 3145."[3] *See Titan,* 615 N.W.2d at 776. This is not a harsh or unreasonable standard to which Plaintiff should be held inasmuch as Plaintiff "is an insurance company itself and is presumably well aware of the much-publicized insurance law of this state." *Federal Kemper*, 293 N.W.2d at 768 (internal quotation marks omitted).

We are not persuaded otherwise by Plaintiff's reliance upon two cases from the Eastern District of Michigan. Specifically,

---

[3]This conclusion is bolstered by the fact that Plaintiff sought reimbursement for Andrea claiming it was a "subrogee." *See* discussion *infra* Part B., Case No. 99-2110.