# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

ESURANCE PROPERTY & CASUALTY INSURANCE COMPANY v MICHIGAN ASSIGNED CLAIMS PLAN

Docket No. 160592. Argued on application for leave to appeal April 8, 2021. Decided July 26, 2021.

Esurance Property & Casualty Insurance Company filed an action in the Wayne Circuit Court against the Michigan Assigned Claims Plan (MACP) and the Michigan Automobile Insurance Placement Facility (MAIPF), seeking reimbursement from defendants for the personal protection insurance (PIP) benefits Esurance had paid to Roshaun Edwards for the injuries he sustained in a motor vehicle crash; there were no other vehicles involved in the crash. Edwards did not have no-fault insurance at the time of the accident, and he did not live with a resident relative who had no-fault insurance. At the time of the accident, the vehicle Edwards was driving was registered in Michigan and titled to Anthony Robert White II (Anthony), who also did not have no-fault insurance of his own. The vehicle was insured by Esurance under a Colorado automobile insurance policy issued to Anthony's mother, Luana Edwards White (Luana). When Luana obtained the policy, she falsely represented that she owned the vehicle, that she lived in Colorado, and that the vehicle would be garaged in that state. Edwards sought PIP benefits from Esurance, and Esurance began paying those benefits. Edwards also applied for benefits from the MACP (as administered by the MAIPF), but the MAIPF did not assign a servicing insurer to Edwards's claim under MCL 500.3175 because Esurance had already taken responsibility for paying PIP benefits to Edwards. When Esurance eventually discovered that Luana had obtained the Colorado policy through her fraudulent misrepresentations, it obtained in the Macomb Circuit Court a default judgment against Edwards, Anthony, and Luana that rescinded the policy, declaring it void *ab initio*. Esurance then filed this equitable-subrogation claim, requesting an order requiring defendants to reimburse it for the PIP benefits it had paid to Edwards. Defendants moved for summary disposition under MCR 2.116(C)(8), arguing that there was no legal basis for the claim because the no-fault act, MCL 500.3101 *et seq.*, did not contemplate reimbursement and indemnification rights in these circumstances. Esurance argued that it could stand in Edwards's place and pursue a claim against defendants through the doctrine of equitable subrogation because Edwards could seek recovery from defendants given that Edwards had timely filed for benefits from the MACP and was not covered by a no-fault policy. The court, David J. Allen, J., granted summary disposition for defendants. Relying on the doctrine *expressio unius est exclusio alterius*, the trial court concluded that equitable subrogation was unavailable to Esurance because while the no-fault act contained some provisions that contemplated reimbursement and indemnification,

none of those provisions allowed Esurance to seek reimbursement from defendants in these circumstances. Esurance appealed. In a published opinion, the Court of Appeals (METER, P.J., and O'BRIEN and SWARTZLE, JJ.), affirmed the trial court's dismissal of Esurance's complaint but on different grounds. The Court concluded that Esurance's equitable-subrogation claim failed as a matter of law for either of two reasons: (1) if the policy existed when Esurance paid the PIP benefits, Esurance's equitable-subrogation claim failed because Edwards could not have pursued benefits from defendants under MCL 500.3172(1); and (2) if the policy was void *ab initio*, then Esurance was a volunteer when it paid the benefits and could not recover its payment of them to Edwards from defendants. In so holding, the Court also rejected the trial court's application of the doctrine *expressio unius est exclusio alterius*, reasoning that the trial court had misapplied the canon when analyzing reimbursement provisions in the no-fault act and from there concluding that Esurance could not make out a claim for equitable subrogation. 330 Mich App 584 (2019). Esurance sought leave to appeal.

In an opinion by Justice ZAHRA, joined by Chief Justice MCCORMACK and Justices BERNSTEIN, CAVANAGH, and WELCH, the Supreme Court, in lieu of granting leave to appeal, *held*:

When a paying insurer has at least an arguable duty to pay benefits under the no-fault act, the insurer is simply protecting its own interests and not acting as a volunteer, and it may invoke the doctrine of equitable subrogation to recover any benefits paid erroneously. The mere existence of an insurance policy that ostensibly covers a claimant does not *ipso facto* render it a policy "applicable to the injury" for purposes of MCL 500.3172(1)(a). Instead, to determine whether there is an "applicable" policy, courts must perform an order-of-priority analysis under MCL 500.3114(1) and (4)(a) through (b).

1. Equitable subrogation is a flexible, elastic doctrine of equity that is analyzed on the case-by-case basis characteristic of equity jurisprudence. Equitable subrogation is the method by which equity compels the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it. It is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. Under the doctrine, the subrogee acquires no greater rights than those possessed by the subrogor, and to recover, the subrogee may not be a mere volunteer. For purposes of equitable subrogation, a "volunteer" is one who intrudes into a matter that does not concern the person, or one who pays the debt of another without request when the person is not legally or morally bound to do so and has no interest to protect in making the payment. A person paying the debt is not a volunteer when the person has an interest to protect. In addition, a payment is not voluntary when made under compulsion, in ignorance of the real state of facts, or under an erroneous impression of one's legal duty. To that end, an insurance company is not a volunteer when it pays expenses on behalf of its insured pursuant to an insurance contract. Similarly, when an insurer pays a claim that another insurer may be liable for, the paying insurer is protecting its own interests and is not acting as a volunteer; under those circumstances, the paying insurer is entitled to invoke the doctrine of equitable subrogation because an insurer who has at least an arguable duty to pay is not a volunteer.

2. MCL 500.3114(1), as amended by 2002 PA 38, provided that a person who sustains an accidental bodily injury in a motor vehicle accident must look first to no-fault insurance policies in their own household for PIP benefits—i.e., to the person named in the policy, the person's

spouse, and a relative of either domiciled in the same household—before looking to other insurers for benefits. If a person injured in a motor vehicle accident is not covered by a no-fault policy in their own household, MCL 500.3114(4)(a) and (b) provided that the injured person may next claim PIP benefits from first, the insurer of the owner or registrant of the vehicle occupied and then second, from the insurer of the operator of the vehicle occupied. If the person is unable to collect benefits applicable to the injury through that order of priority, MCL 500.3172(1)(a) provides that the person may claim PIP benefits through the MACP. The mere existence of an insurance policy that ostensibly covers a claimant does not *ipso facto* render it a policy "applicable to the injury" for purposes of MCL 500.3172(1)(a). Instead, to determine whether there is an "applicable" policy, courts must perform an order-of-priority analysis under MCL 500.3114(1) and (4)(a) through (b).

3. MCL 500.3142, MCL 500.3148, and MCL 600.6013 incentivize insurers to pay benefits promptly and to sort out priority and reimbursement later by the potential imposition of steep penalties if an insurer does not pay promptly. To achieve that aim, the no-fault act is designed to provide sure and speedy recovery of certain economic losses that occur from motor vehicle accidents. Therefore, when there is a dispute between two insurers regarding responsibility to pay, it is preferred that one of the insurers pay the claim and sue the other in an action for equitable subrogation. Accordingly, an insurer that pays the claim for which another may be liable has an arguable duty to pay. For that reason, when an insurer does pay under those circumstances, it is simply protecting its own interests and not acting as a volunteer, and it may invoke the doctrine of equitable subrogation to recover the benefits paid erroneously; to hold otherwise would be contrary to the purpose, logic, and incentive structure of Michigan's no-fault act.

4. In this case, the Esurance policy was declared void *ab initio* after the accident. However, at the time of the accident, Edwards did not have no-fault insurance, and he was not a resident relative of someone who had a no-fault policy. As a result, Edwards was not covered by the policy issued by Esurance under MCL 500.3114(1). Esurance was also not in the order of priority under MCL 500.3114(4)(a) through (b) because the vehicle was owned by another person not insured by Esurance and the operator of the vehicle, Edwards, did not have a no-fault policy and did not live with a resident relative who had no-fault insurance. Because there was no policy "applicable to the injury" under the order-of priority analysis, the facts as alleged in Esurance's complaint supported that Edwards had a viable claim for PIP benefits against defendants under MCL 500.3172(1)(a). Furthermore, although Esurance was not in the order of priority before the policy was rescinded, it believed it was because of Luana's misrepresentations in her insurance application. As a result, Edwards was not a volunteer when it paid the benefits because it did so under an erroneous impression of both the facts and its legal duty; to hold otherwise would frustrate the purpose, logic, and incentive structure of the no-fault act. In light of that conclusion, Esurance's equitable-subrogation claim was not precluded as a matter of law. The Court of Appeals erred by concluding that Esurance's equitable-subrogation claim failed as a matter of law because there either was a policy applicable to the injury under MCL 500.3172(1) or because Esurance's payments to Edwards were voluntary. But the Court of Appeals correctly rejected the trial court's application of the *expressio unius est exclusio alterius* canon of statutory interpretation to the no-fault act's reimbursement provisions. Finally, given that the Court of Appeals did not address whether defendants could be sued under MCL 500.3174, remand for it to address that issue was necessary.

Reversed and remanded.

Justice CLEMENT, joined by Justice VIVIANO, dissenting, agreed with the majority that the lower courts erroneously resolved the issues presented but disagreed that it was necessary to resolve more than whether those courts correctly resolved the issues. The trial court incorrectly applied the *expressio unius* canon to conclude that Esurance could not pursue an equitable-subrogation claim because it was not one of the listed mechanisms in the no-fault act by which a no-fault insurer could recover benefits paid; the reimbursement options in the no-fault act do not exclude other theories of reimbursement. The Court of Appeals should have recognized that whether Esurance had a valid claim for equitable subrogation turned on whether Edwards would have had a claim against defendants *if* the policy issued by Esurance to Luana had been rescinded before Edwards's accident. Further contrary to the Court of Appeals' conclusion, the fact that the insurance policy was rescinded did not turn Esurance into an after-the-fact volunteer such as to defeat its subrogation claim. Justice CLEMENT would have corrected the lower courts' errors and remanded to the trial court to resume its consideration of the case in view of the corrections.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED July 26, 2021

STATE OF MICHIGAN

SUPREME COURT

ESURANCE PROPERTY & CASUALTY
INSURANCE COMPANY,

Plaintiff-Appellant,

v                                                           No. 160592

MICHIGAN ASSIGNED CLAIMS PLAN
and MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY,

Defendants-Appellees.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

Plaintiff Esurance Property & Casualty Insurance Company (Esurance) paid

personal injury protection (PIP) benefits[1] to the claimant, Roshaun Edwards (Edwards),

---

[1] "What are commonly called 'PIP benefits' are actually personal protection insurance (PPI) benefits by statute. MCL 500.3142. However, lawyers and others call these benefits

pursuant to a no-fault automobile insurance policy, issued to another person, that was later declared void *ab initio*.[2]  Thereafter, Esurance filed this suit against defendants, the Michigan Assigned Claims Plan (MACP) and the Michigan Automobile Insurance Placement Facility (MAIPF), seeking reimbursement from them under a theory of equitable subrogation for the PIP benefits that Esurance had paid to Edwards under Michigan's no-fault act, MCL 500.3101 *et seq.*, before the policy was rescinded.  We hold that an insurer who erroneously pays PIP benefits may be reimbursed under a theory of equitable subrogation when the insurer is not in the order of priority and the payments are made pursuant to its arguable duty to pay to protect its own interests.  On the facts alleged in this case, Esurance can stand in Edwards's shoes and pursue a claim for equitable subrogation because it was not in the order of priority and also was not a "mere volunteer"[3] under Michigan law when it paid Edwards's PIP benefits.  Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court for further proceedings consistent with this opinion.

---

PIP benefits to distinguish them from property protection insurance benefits." *Roberts v Farmers Ins Exch*, 275 Mich App 58, 66 n 4; 737 NW2d 332 (2007).

[2] "Null from the beginning, as from the first moment when a contract is entered into." *Black's Law Dictionary* (11th ed), p 1885.  The circuit court found that the policy was obtained through fraud and by default judgment adjudged it void *ab initio*.

[3] The term "mere volunteer" comes from the law of equitable subrogation.  As will be explained more fully later in this opinion, a party cannot seek equitable subrogation for a voluntary action, where *voluntary* means *without an interest to protect*.  See *DAIIE v Detroit Mut Auto Ins Co*, 337 Mich 50, 53-54; 59 NW2d 80 (1953) (quotation marks and citation omitted; emphasis added).

## I. BASIC FACTS AND PROCEDURAL HISTORY

On January 10, 2016, Edwards was seriously injured when he crashed a red 2015 Dodge Challenger into a telephone pole in the city of Detroit. At the time, Edwards did not have no-fault insurance of his own, and he did not live with a resident relative who had no-fault insurance. When the accident occurred, the vehicle was registered in Michigan and titled to Anthony Robert White II (Anthony). Anthony likewise did not have no-fault insurance of his own; however, his mother, Luana Edwards-White (Luana), had procured a Colorado automobile insurance policy from Esurance on the basis of her representations that she owned the vehicle, that she lived in Colorado, and that the vehicle would be garaged there.

Esurance began paying PIP benefits in response to Edwards's claims.[4] Edwards also applied for benefits from defendants,[5] but a servicing insurer was not assigned to his claim under MCL 500.3175 because Esurance had already taken responsibility for paying Edwards's PIP benefits.

Esurance eventually discovered that Luana had obtained the Colorado policy through her fraudulent misrepresentations. In reality, Luana was neither the registrant nor owner of the vehicle, which had been garaged in Michigan and not Colorado. Esurance subsequently filed an action in the Macomb Circuit Court to rescind the policy, naming Edwards, Luana, and Anthony as defendants. In a March 20, 2017 order, the circuit court entered a default judgment that rescinded the policy, voiding it *ab initio*.

---

[4] At the time Esurance paid these PIP benefits, it believed that it was the highest-priority insurer.

[5] Specifically from the MACP, as administered by the MAIPF. See MCL 500.3171(2).

3

Esurance subsequently filed the instant suit in the Wayne Circuit Court, asserting a claim of equitable subrogation and requesting an order that would require defendants to reimburse it for the PIP benefits that it had paid to Edwards. Defendants moved for summary disposition under MCR 2.116(C)(8) (failure to state claim on which relief can be granted), arguing that there was no legal basis for an equitable-subrogation claim against them.[6] Defendants argued that the no-fault act contemplates rights of reimbursement and indemnification in a variety of circumstances, but not in this one. In response, Esurance argued that the lack of statutory authority for its claim was not dispositive given that Edwards could have sought recovery from defendants because he had timely applied for benefits from defendants and had no applicable no-fault policy; moreover, because Esurance had paid Edwards's medical bills, it could pursue, standing in Edwards's shoes, a claim against defendants for reimbursement under the doctrine of equitable subrogation.[7] The circuit court, relying on the statutory canon of interpretation *expressio unius est exclusio alterius*,[8] ruled that equitable subrogation was unavailable to Esurance because

---

[6] Given that this case comes to us on appeal from a (C)(8) motion, whether the MACP is a proper party is not obvious, see *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 265 n 1; 951 NW2d 731 (2019), but we need not decide this question to resolve this case.

[7] See *Atlanta Int'l Ins Co v Bell*, 438 Mich 512, 521-522; 475 NW2d 294 (1991) ("Equitable subrogation has been described as a 'legal fiction' that permits one party to stand in the shoes of another.") (opinion by BRICKLEY, J.) (citation omitted).

[8] *Dave's Place, Inc v Liquor Control Comm*, 277 Mich 551, 555; 269 NW 594 (1936) (describing the canon as the "general principle of interpretation that the mention of one thing implies the exclusion of another thing") (opinion by BUSHNELL, J.) (quotation marks and citation omitted).

4

the no-fault act contains some provisions that explicitly contemplate reimbursement and indemnification[9] but none that contemplates Esurance's requested reimbursement from defendants in these circumstances.

Esurance appealed as of right in the Court of Appeals, which affirmed the circuit court's grant of summary disposition to defendants, albeit on the alternate ground that Esurance could not make out a claim of equitable subrogation.[10]  The Court of Appeals succinctly summarized its holding:

_____

[9] See, e.g., MCL 500.3114(8) (allowing a no-fault insurer to receive partial recoupment from other no-fault insurers standing in equal priority); MCL 500.3116 (providing rights of reimbursement and indemnity to no-fault insurers for cases in which a claimant recovers on a tort claim); MCL 500.3146 (setting a limitations period for claims for reimbursement or indemnity brought under MCL 500.3116); MCL 500.3175(2) (allowing insurers to whom a claim is assigned by the MAIPF to seek reimbursement and indemnity from third parties); MCL 500.3177(1) (creating a right for a no-fault insurer to seek reimbursement from an owner of an uninsured vehicle involved in an accident).

[10] *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 330 Mich App 584, 589; 950 NW2d 528 (2019) (*Esurance*).  The Court of Appeals very briefly addressed, and disagreed with, the circuit court's application of the *expressio unius est exclusio alterius* canon of statutory interpretation, holding that it had misapplied the canon to conclude that Esurance could not make out a claim for equitable subrogation.  *Id*. at 590-591.  "The maxim 'has force only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.' "  *Id*. at 591, quoting *Barnhart v Peabody Coal Co*, 537 US 149, 168; 123 S Ct 748; 154 L Ed 2d 653 (2003).  And because various reimbursement provisions are scattered throughout the no-fault act and involve distinct factual scenarios, the Court of Appeals reasoned that it could not "presume that those statutes are necessarily exclusive of any and all other similar remedies in all factual scenarios.  Doing so would presume that the Legislature deliberately chose not to include a right to equitable subrogation by a no-fault insurer against defendants, which is unwarranted from the text of the [no-fault act]."  *Esurance*, 330 Mich App at 591.  The Court of Appeals' analysis on that issue was correct.  See *Bronner v Detroit*, 507 Mich ___, ___; ___ NW2d ___ (2021) (Docket No. 160242); slip op at 11-15 (holding that the Court of Appeals misapplied the *expressio unius* canon in construing provisions of the Insurance Code that permit no-fault

In the end, there are two ways to look at the problem. Either the equitable-subrogation claim must be analyzed under the circumstances that existed when benefits were paid, which was before the policy was rescinded, or it must be looked at through the lens that the policy never existed in the first place. If the policy exists, [Esurance's] claim of equitable subrogation fails as a matter of law because Edwards could not have pursued benefits from defendants under MCL 500.3172(1). If the policy never existed, then [Esurance] was a mere volunteer when it paid $571,000 in PIP benefits. In either case, [Esurance's] equitable-subrogation claim fails as a matter of law.[11]

In other words, according to the Court of Appeals, Esurance's equitable-subrogation claim fails regardless of the status of the insurance policy's existence.

Esurance sought leave to appeal in this Court, and in lieu of granting leave, we ordered oral argument on the application.[12]

## II. STANDARD OF REVIEW

The trial court granted defendants summary disposition under MCR 2.116(C)(8). As this Court recently explained:

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery.[13]

---

insurers to seek reimbursement for payment of some benefits as implicitly excluding any other reimbursement mechanism).

[11] *Esurance*, 330 Mich App at 595.

[12] *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 506 Mich 913 (2020).

[13] *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 685 (2019) (citations and emphasis omitted).

We review de novo a trial court's decision on a motion for summary disposition.[14] A question of statutory interpretation is a question of law that this Court also reviews de novo.[15] "[C]ourts must interpret statutes in a way that gives effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory."[16] "A statute is rendered nugatory when an interpretation fails to give it meaning or effect."[17] Finally, this Court reviews de novo the application of a remedial, equitable doctrine such as equitable subrogation.[18]

## III. ANALYSIS

Our analysis proceeds in four parts. First, we state the principles that underpin a claim for equitable subrogation. Second, we lay out the relevant provisions of the no-fault act. Third, we establish that Esurance is not asserting greater rights than Edwards possesses; that is, there is a legal basis upon which Esurance can press its claim for equitable relief, grounded in an order-of-priority analysis. Fourth and finally, we analyze the interplay among rescission, Esurance's alleged volunteer status, and its claim for

---

[14] *Kendzierski v Macomb Co*, 503 Mich 296, 302; 931 NW2d 604 (2019).

[15] *Wigfall v Detroit*, 504 Mich 330, 337; 934 NW2d 760 (2019).

[16] *O'Connell v Dir of Elections*, 316 Mich App 91, 98; 891 NW2d 240 (2016) (quotation marks and citation omitted).

[17] *Apsey v Mem Hosp*, 477 Mich 120, 131; 730 NW2d 695 (2007).

[18] See *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013) (applying this principle to the equitable doctrine of laches).

equitable subrogation—namely, whether rescission of the policy renders Esurance a volunteer and prevents Esurance from pursuing its equitable-subrogation claim.

## A. PRINCIPLES THAT UNDERPIN AN EQUITABLE-SUBROGATION CLAIM

"Equitable subrogation is a flexible, elastic doctrine of equity."[19]  Thus, "[i]ts application 'should and must proceed on the case-by-case analysis characteristic of equity jurisprudence.' "[20]  Equitable subrogation is the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it."[21]  Equitable subrogation has been invoked successfully in a variety of circumstances,[22] but "the mere fact that [it] has not been previously invoked in a particular situation is not a prima facie bar to its applicability."[23]  This Court has explained that equitable subrogation "is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies

---

[19] *Hartford Accident & Indemnity Co v Used Car Factory, Inc*, 461 Mich 210, 215; 600 NW2d 630 (1999), citing *Atlanta Int'l Ins Co v Bell*, 438 Mich at 521 (opinion by BRICKLEY, J.).

[20] *Hartford Accident & Indemnity Co*, 461 Mich at 215, quoting *Atlanta Int'l Ins Co*, 438 Mich at 516 n 1 (opinion by BRICKLEY, J.).

[21] *Smith v Sprague*, 244 Mich 577, 580; 222 NW 207 (1928) (quotation marks and citations omitted).

[22] *Esurance*, 330 Mich App at 590 (collecting cases).

[23] *Hartford*, 461 Mich at 216 (quotation marks and citation omitted).

8

of the other."[24]  The doctrine has two prongs: "the subrogee acquires no greater rights than those possessed by the subrogor, and . . . the subrogee may not be a 'mere volunteer.' "[25]

This Court has defined a "volunteer" as "one who intrudes himself into a matter which does not concern him, or one who pays the debt of another without request, when he is not legally or morally bound to do so, and when he has no interest to protect in making such payment."[26]  But "[w]here the person paying the debt has an interest to protect, he is not a stranger. . . .  A payment is not voluntary when made *under compulsion, . . . in ignorance of the real state of facts, or under an erroneous impression of one's legal duty*."[27]  When an insurer pays expenses on behalf of its insured pursuant to an insurance contract, it is not doing so as a volunteer.[28]  And when an insurer pays a claim that another insurer may be liable for, it is "protecting its own interests and not acting as a volunteer," and in that instance, the insurer is "entitled to invoke the doctrine of equitable

---

[24] *Auto-Owners Ins Co v Amoco Prod Co*, 468 Mich 53, 59; 658 NW2d 460 (2003), quoting *Commercial Union Ins Co v Med Protective Co*, 426 Mich 109, 117; 393 NW2d 479 (1986) (opinion by WILLIAMS, C.J.).  See also *Machined Parts Corp v Schneider*, 289 Mich 567, 574; 286 NW 831 (1939) ("The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect.") (quotation marks and citations omitted).

[25] *Auto-Owners Ins Co*, 468 Mich at 59, quoting *Commercial Union Ins Co*, 426 Mich at 117 (opinion by WILLIAMS, C.J.).

[26] *DAIIE*, 337 Mich at 53-54 (quotation marks and citations omitted).

[27] *Id*. at 54 (quotation marks, citation, and paragraph structure omitted; emphasis added).

[28] *Auto-Owners Ins Co*, 468 Mich at 59, citing *Auto Club Ins Ass'n v New York Life Ins Co*, 440 Mich 126, 132; 485 NW2d 695 (1992).  See also *DAIIE*, 337 Mich at 54-55.

9

subrogation."[29]  Logically, then, an insurer who has "at least an arguable duty to pay" is "clearly not a volunteer."[30]

## B.  RELEVANT PROVISIONS OF THE NO-FAULT ACT

At the time of the accident, MCL 500.3114 provided, in relevant part:

> (1) . . . [A] personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. . . .
>
> * * *
>
> (4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the vehicle occupied.
>
> (b) The insurer of the operator of the vehicle occupied.[31]

MCL 500.3172(1) provides, in relevant part:

---

[29] *Auto-Owners Ins Co*, 468 Mich at 60; see also *Auto Club Ins Ass'n*, 440 Mich at 132-133.

[30] See *Maryland Cas Co v Transamerica Ins Corp of America*, 199 Mich App 561, 565; 502 NW2d 749 (1993).  See also *Fed Ins Co, an Indiana Corp v Hartford Steam Boiler Inspection & Ins Co*, 415 F3d 487, 494-495 (CA 6, 2005) (applying Michigan law and holding that the plaintiff was "not a volunteer, and its claim for equitable subrogation may proceed" because, at the time each payment was made, the plaintiff was "ignorant of the 'real state of facts' " and " 'under an erroneous impression' that it had a legal duty to compensate" another party under an insurance policy provision).

[31] MCL 500.3114(1) and (4)(a) through (b), as amended by 2002 PA 38, effective March 7, 2002.

> A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may claim personal protection insurance benefits through the assigned claims plan if any of the following apply:
>
> (a) No personal protection insurance is applicable to the injury.[32]

## C. BECAUSE ESURANCE WAS NOT IN THE ORDER OF PRIORITY, IT HAD NO ACTUAL DUTY TO PAY PIP BENEFITS

The Court of Appeals erred when it determined that MCL 500.3172(1)(a) prevents Esurance from pursuing an equitable-subrogation claim against defendants. In an action sounding in equitable subrogation, Esurance, as the subrogee, possesses no greater rights than those possessed by Edwards, the subrogor.[33] Accordingly, we determine whether, on the facts alleged, Edwards could have claimed benefits from defendants; if he could have, then Esurance has a viable equitable-subrogation claim. In light of our order-of-priority analysis under MCL 500.3114, we conclude that Edwards did have a claim for those benefits from defendants, so Esurance's equitable-subrogation claim does not fail as a matter of law.

---

[32] MCL 500.3172(1)(a). The version of this statute in effect at the time of the accident was MCL 500.3172(1)(a), as amended by 2012 PA 204, effective September, 1, 2012. The former version of the statute was substantively the same as the current version, and any minor differences between the 2012 version and the current version are neither material nor relevant to this case. All references to MCL 500.3172 in this opinion are to the current version of the statute. See 2019 PA 21.

[33] "Equity follows the law." See 1 Callaghan's Michigan Pleading & Practice (2d ed), § 8:35, p 496.

11

MCL 500.3172(1)(a) provides that a claimant "may claim [PIP] benefits through the [MACP] if . . . [n]o personal protection insurance is applicable to the injury."[34] The Court of Appeals reasoned that Esurance was claiming greater rights in its action for equitable subrogation than Edwards could himself have claimed because "when Edwards applied for benefits from the MAIPF, there *was* an applicable no-fault insurer: [Esurance]."[35] Thus, "because Edwards had no claim against defendants, there is no claim for [Esurance] to enforce against defendants through equitable subrogation."[36] But this reasoning is flawed. The mere existence of an insurance policy that ostensibly covers a claimant does not *ipso facto* render it a policy "applicable to the injury" under MCL 500.3172(1)(a). To know if there is such an "applicable" policy, courts must perform an order-of-priority analysis under MCL 500.3114(1) and (4)(a) through (b).

Based on the allegations in its complaint, Esurance's policy was not "applicable to the injury" for purposes of MCL 500.3172(1)(a) because Esurance, whose policy was

---

[34] MCL 500.3172(1)(a) (paragraph structure omitted). Esurance alleged in its complaint that "Edwards, at the time of the accident, did not have insurance of his own and did not live with a resident relative who had insurance"; that "at the time of the accident, the 2015 Dodge Challenger was solely owned and registered to [Anthony]"; that "there is no applicable automobile insurance for [Edwards's] bodily injuries as a result of" the car accident; and that "[u]pon information and belief, there are no other priority insurers other than MACP/MAIPF." These assertions—which must be accepted as true for the purposes of a motion for summary disposition under MCR 2.116(C)(8)—are sufficient to allege that Edwards, and thus Esurance, had a claim against defendants under MCR 500.3172(1)(a).

[35] *Esurance*, 330 Mich App at 592.

[36] *Id*. at 593.

12

declared void *ab initio* after the accident,[37] was not in the order of priority stated in MCL 500.3114(1) and (4)(a) through (b).  MCL 500.3114(1) establishes a general rule that a person who sustains an accidental bodily injury in a motor vehicle accident must look first to no-fault insurance policies in his or her own household for no-fault benefits before looking to other insurers for benefits.[38]  Moreover, it is persons who are insured against loss, not vehicles; that is, no-fault coverage is tied to persons, not vehicles.[39]  At the time of the accident, Edwards did not have no-fault insurance, and he also was not a resident relative of someone who did, which means that he was not covered by the policy issued by Esurance under MCL 500.3114(1).  We next turn to MCL 500.3114(4)(a), which provides that Edwards could recover from "[t]he insurer of *the owner or registrant* of the vehicle

---

[37] *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018).  See also *id*. ("[R]escission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made."), citing *Wall v Zynda*, 283 Mich 260, 264-265; 278 NW 66 (1938); and *id*. at 409 n 10 ("[R]escission abrogates a contract completely.  All former contract rights are annulled, and it is as if no contract had been made.  Thus, to rescind a contract is not merely to terminate it, but to undo it from the beginning, and the effect of rescission is not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made.  Rescission involves a restoration of the status quo."), quoting 5A Michigan Civil Jurisprudence, Contracts, § 215, pp 439-440.

[38] *Mich Mut Ins Co v Farm Bureau Ins Group*, 183 Mich App 626, 630; 455 NW2d 352 (1990).  Accord *Underhill v Safeco Ins Co*, 407 Mich 175, 191; 284 NW2d 463 (1979) ("It is our understanding of the legislative purpose that it was intended that injured persons who are insured or whose family member is insured for no-fault benefits would have primary resort to their own insurer.").

[39] *Lee v DAIIE*, 412 Mich 505, 509; 315 NW2d 413 (1982) ("[I]t is the policy of the no-fault act that persons, not motor vehicles, are insured against loss.").

13

occupied" in the accident.[40]  In this case, the vehicle was in fact owned by Anthony, regardless of the policy's rescission, and Esurance was not his insurer, which means Esurance again was not in the order of priority.  Finally, we turn to MCL 500.3114(4)(b), which provides that Edwards could recover from "[t]he insurer of *the operator* of the vehicle occupied" in the accident.[41]  Again, the operator of the vehicle was Edwards, who, at the time, did not have no-fault insurance of his own and did not live with a resident relative who had no-fault insurance.  Thus, Esurance's complaint supports the conclusion that Edwards had a viable claim against defendants under MCL 500.3172(1)(a) because there was no policy "applicable to the injury" under the foregoing order-of-priority analysis.  As a result, Esurance's equitable-subrogation claim, as pled by Esurance, can proceed.

## D.  BECAUSE ESURANCE WAS NOT A VOLUNTEER, IT CAN PURSUE A CLAIM FOR EQUITABLE SUBROGATION

The Court of Appeals correctly recognized that when an insurance policy has been rescinded, it is void *ab initio*, which means it is as though the policy never existed; consequently, the parties are "restore[d] . . . to the relative positions that they would have occupied if the contract had never been made."[42]  Based on the allegations in the pleadings, Esurance was not in the order of priority before the policy was rescinded, but it believed that is was because of Luana's misrepresentations in her insurance application.  Therefore,

---

[40] MCL 500.3114(4)(a) (emphasis added).

[41] MCL 500.3114(4)(b) (emphasis added).

[42] *Bazzi*, 502 Mich at 409.  See also note 37 of this opinion.

14

Esurance paid PIP benefits to Edwards "under an erroneous impression of [its] legal duty."[43] Accordingly, the issue here is simply whether Esurance's claim for equitable subrogation is precluded as a matter of law given that it promptly, albeit erroneously, paid PIP benefits to Edwards as the no-fault act requires. Esurance is not so precluded; that holding would defeat the purpose of equitable subrogation,[44] and it would frustrate the no-fault act's purpose vis-à-vis the timing of payments for benefits and the expedited handling of disputes.

It is helpful to contextualize this dispute in light of both the purpose of the no-fault act and the incentive structure that it puts in place for insurers like Esurance to pay a claimant's PIP benefits in a timely fashion. The no-fault act is "a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents."[45] For that reason, "whenever a priority question

---

[43] *DAIIE*, 337 Mich at 54; *Maryland Cas Co*, 199 Mich App at 564-565; *Fed Ins Co, an Indiana Corp*, 415 F3d at 494. In addition, a similar rule has been stated with approval in 16 Couch, Insurance, 3d, § 223:27, pp 58-59 ("For purposes of determining insurer's subrogation rights, insurance payment is not voluntary if it is made with reasonable or good-faith belief in obligation or personal interest in making that payment. This standard is met when an insurer has acted in good faith to discharge a disputed obligation, even if it is ultimately determined that its insurance policy did not apply.").

[44] Equitable subrogation is the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it." *Smith*, 244 Mich at 580 (quotation marks and citations omitted).

[45] *Belcher v Aetna Cas & Surety Co*, 409 Mich 231, 240; 293 NW2d 594 (1980). Accord *Perez v State Farm Mut Auto Ins Co*, 418 Mich 634, 647; 344 NW2d 773 (1984) (LEVIN, J., for reversal) (explaining that the no-fault act "provid[es] assured, adequate and prompt recovery for certain economic losses arising from motor vehicle accidents") (quotation marks and citation omitted).

arises between two insurers, the preferred method of resolution is for one of the insurers to pay the claim and sue the other in an action of [equitable] subrogation."[46]  Accordingly, an insurer that pays a claim for which another *may* be liable has "an arguable duty" to pay.[47]  Therefore, when an insurer *does* pay under those circumstances, it is merely "protecting its own interests and not acting as a volunteer," which "entitle[s] [it] to invoke the doctrine of equitable subrogation . . . ."[48]  The notion that an insurer with an arguable duty to pay PIP benefits must do so promptly to protect its own interests, and that its doing so does *not* make it a volunteer, stems largely from the operation of three specific statutes, two of which are part of the no-fault act.[49]  These statutes strongly incentivize insurers like Esurance to adhere to the no-fault act's "pay promptly, litigate later" logic.

MCL 500.3142[50] specifies that PIP benefits "are payable as loss accrues" and "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and

---

[46] *Allstate Ins Co v Citizens Ins Co of America*, 118 Mich App 594, 603-604; 325 NW2d 505 (1982), citing *Farmers Ins Group v Progressive Cas Ins Co*, 84 Mich App 474, 484; 269 NW2d 647 (1978).

[47] *Maryland Cas Co*, 199 Mich App at 564-565.

[48] *Auto-Owners Ins Co*, 468 Mich at 60; see also *Auto Club Ins Ass'n*, 440 Mich at 132-133.

[49] MCL 500.3142 and MCL 500.3148 are part of the no-fault act, and the third, MCL 600.6013, is part of the Revised Judicature Act, MCL 600.101 *et seq*.

[50] MCL 500.3142 was amended by 2019 PA 21, effective June 11, 2019.  The amendment did not substantively change the relevant subsections, and all references in this opinion to MCL 500.3142 are to the current version of the statute.

of the amount of loss sustained."[51]  The 30-day window also applies to parts of claims supported by reasonable proof, and in addition, an insurer has 30 days to pay PIP benefits on "any part of the remainder of the claim that is later supported by reasonable proof . . . ."[52]  "An overdue payment bears simple interest at the rate of 12% per annum."[53] Further, MCL 600.6013 authorizes levying statutory interest on judgments "rendered on a written instrument evidencing indebtedness with a specified interest rate[.]"[54]  That rate "shall not exceed 13% per year compounded annually."[55]  Finally, MCL 500.3148 provides for the assessment of attorney fees "if the court finds that a no-fault insurer has unreasonably delayed in making benefit payments."[56]  "[W]hen the only question is which of two insurers will pay, it is unreasonable for an insurer to refuse payment of benefits."[57] "A dispute of priority among insurers will not excuse the delay in making timely payment."[58]

---

[51] MCL 500.3142(1) and (2).  See also *Auto Club Ins Ass'n*, 440 Mich at 133.

[52] MCL 500.3142(2).

[53] MCL 500.3142(4).

[54] MCL 600.6013(7).  See also *Auto Club Ins Ass'n*, 440 Mich at 133.

[55] MCL 600.6013(7).

[56] *Auto Club Ins Ass'n*, 440 Mich at 133; MCL 500.3148(1).

[57] *Univ of Mich Regents v State Farm Mut Ins Co*, 250 Mich App 719, 737; 650 NW2d 129 (2002), overruled on other grounds by *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191 (2017).

[58] *Bloemsma v Auto Club Ins Co*, 174 Mich App 692, 697; 436 NW2d 442 (1989).

What emerges from these statutes is an axiom of both no-fault insurance law and practice: insurers like Esurance must pay PIP benefits to claimants promptly and sort out priority and reimbursement issues later. That axiom is actualized by the very real possibility that steep penalties will be assessed against an insurer that drags its feet in paying PIP benefits to claimants.[59] Thus, the purpose, logic, and incentive structure of Michigan's no-fault regime all run contrary to the conclusion that Esurance was acting as a volunteer when it promptly complied with the no-fault act's various payment-incentivizing provisions while at the same time doing so "in ignorance of the real state of facts" and while laboring "under an erroneous impression of [its] legal duty."[60] Under these circumstances, Esurance had "an arguable duty" to pay Edwards's claim because Luana had represented that she owned the crashed vehicle, which, if true, would have rendered Esurance the highest-priority insurer under MCL 500.3114.[61] But because Esurance was not in the order of priority, and it was operating under a mistaken understanding of both the facts and its legal duties, Esurance's payments to Edwards were properly understood to be nonvoluntary, and equitable subrogation is thus available to it as a remedy.

---

[59] See *Univ of Mich Regents*, 250 Mich App at 737; *Bloemsma*, 174 Mich App at 697.

[60] *DAIIE*, 337 Mich at 54 (quotation marks and citation omitted).

[61] *Maryland Cas Co*, 199 Mich App at 564-565.

## IV. CONCLUSION

The Court of Appeals observed that the question of whether defendants can be sued under MCL 500.3174 "is not relevant if there is no possible claim to bring against them in the first place."[62] And since the Court of Appeals held that Esurance could not pursue its equitable-subrogation claim against defendants, it concluded that MCL 500.3174 was ultimately not relevant and that it did not need "to address the question of who, exactly, may be sued under that statute."[63] But because we have determined that Esurance does have a viable claim against defendants, the question of who may be sued under MCL 500.3174 is relevant.

Accordingly, we reverse the Court of Appeals, and on remand, the Court of Appeals shall consider—in addition to any other issues it deems relevant in light of this opinion— whether defendants can be sued under MCL 500.3174. If necessary to the proper resolution of this case, the Court of Appeals may remand to the trial court. We do not retain jurisdiction.

> Brian K. Zahra
> Bridget M. McCormack
> Richard H. Bernstein
> Megan K. Cavanagh
> Elizabeth M. Welch

---

[62] *Esurance*, 330 Mich App at 593 n 4.

[63] *Id*.

S T A T E   O F   M I C H I G A N

SUPREME COURT

ESURANCE PROPERTY & CASUALTY
INSURANCE COMPANY,

Plaintiff-Appellant,

v                                                                    No. 160592

MICHIGAN ASSIGNED CLAIMS PLAN
and MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY,

Defendants-Appellees.

CLEMENT, J. (*dissenting*).

Esurance Property & Casualty Insurance Company issued a no-fault insurance policy to Luana Edwards-White. Later, Roshaun Edwards was injured while operating the insured vehicle, and Esurance paid personal protection insurance (PIP) benefits to Roshaun. Eventually, Esurance filed a successful rescission action against Luana, rescinding the no-fault policy it had issued to her. Seeking to recover the PIP benefits it had paid, Esurance then sued the Michigan Assigned Claims Plan (MACP), theorizing that it was equitably subrogated to the claim Roshaun *would* have had against the MACP if the policy issued to Luana had been rescinded before Roshaun's accident. The trial court disagreed, and the Court of Appeals affirmed.[1] In my view, this Court need not do more

_____

[1] *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 330 Mich App 584; 950 NW2d 528 (2019).

than resolve whether those courts correctly resolved the issues presented. I agree with the rest of the Court that the lower courts did not correctly resolve the issues presented, but I believe the majority reaches issues we need not address. I would simply hold that the rationales the lower courts adopted for dismissing Esurance's subrogation claim were incorrect and remand to the trial court to resume its consideration of the case from the point it left off when it (erroneously) granted summary disposition to the MACP.

The trial court's rationale for granting summary disposition to the MACP was the negative-implication canon *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another. The court held that Michigan's no-fault laws provide mechanisms by which a no-fault insurer can recover PIP benefits paid and, by negative implication, that these are the exclusive mechanisms for no-fault insurers to recover PIP benefits paid. Because an equitable-subrogation action is not one of the listed mechanisms in the no-fault act,[2] the trial court concluded that Esurance could not maintain this action. The Court of Appeals correctly rejected this argument, stating, "[I]t is a misapplication of the *expressio unius* maxim to conclude that the Legislature must have intended to exclude the type of suit brought by plaintiff because such action is not specified in the no-fault act." *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 330 Mich App 584, 591; 950 NW2d 528 (2019). This Court recently agreed, holding that "we do not believe these [reimbursement] options can be construed as 'an expression of all that shares in the grant' of avenues for reimbursement" allowed by the no-fault law. *Bronner v Detroit*, 507 Mich ___, ___; ___ NW2d ___ (2021).

---

[2] MCL 500.3101 *et seq*.

However, the Court of Appeals affirmed the trial court, holding that it had reached the right result for the wrong reasons. The Court of Appeals reasoned that, at the time Esurance was paying PIP benefits to Edwards, Edwards had no claim against the MACP, precisely because the insurance policy Esurance had issued to Luana existed. "[W]hen Edwards applied for [an assigned claim], there was an applicable no-fault insurer: plaintiff. Thus, Edwards had no right to [an assigned claim] because none of the four avenues for making a[n assigned claim] under MCL 500.3172 was open to him." *Esurance*, 330 Mich App at 592 (emphasis omitted). On this theory, Edwards had no claim against the MACP to which Esurance could be subrogated.

This reasoning denies the equitable nature of both rescission and subrogation. As the majority notes, subrogation is a "flexible and elastic equitable doctrine" "that permits one party to stand in the shoes of another." *Atlanta Int'l Ins Co v Bell*, 438 Mich 512, 521-522; 475 NW2d 294 (1991) (opinion by BRICKLEY, J.). But rescission itself is also an equitable remedy. *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 31; 331 NW2d 203 (1982). It imposes some degree of revisionist history—a legal fiction—in the name of fairness:

> To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning ; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and *restore the parties to the relative positions which they would have occupied if no such contract had ever been made*. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while *the idea of rescission involves the additional and distinguishing element of a restoration of the status quo*. [*Wall v Zynda*, 283 Mich 260, 264; 278 NW 66 (1938) (quotation marks and citation omitted; emphasis added).]

3

The inquiry does not ask what Roshaun's options were on the day he filed a claim for PIP benefits. To "restore the parties to the relative positions which they would have occupied if no . . . contract had ever been made," *id*., we ask what Roshaun's options *should have been* on the day he filed a claim for PIP benefits—what he could have done *if* the policy Esurance issued to Luana had been rescinded before Roshaun's accident. If Roshaun *should* have had a claim against the MACP for PIP benefits had Esurance never issued any policy to Luana, then Esurance could potentially be subrogated to that claim.[3]

The Court of Appeals held in the alternative that Esurance's successful rescission of the policy it had issued to Luana turned it into a volunteer—precluding subrogation relief. Because Esurance successfully rescinded the policy it had issued to Luana, the PIP payments it made to Roshaun as a result of the policy were to be construed, ex post facto, as voluntary payments made to someone with whom Esurance had no contractual relationship and to whom it owed no legal responsibilities.

> [I]f the claim for equitable subrogation proceeds under the premise that the policy never existed, then plaintiff had no obligation to pay PIP benefits on [Roshaun's] behalf. Without a policy, plaintiff would have paid benefits not to its insured, but to an individual with whom it had no relationship. Without any legal or equitable duty to pay PIP benefits, plaintiff is a mere volunteer— one who accidentally paid nearly $600,000 in PIP benefits. [*Esurance*, 330 Mich App at 595.]

---

[3] As noted by the majority, Roshaun "also applied for benefits from defendants," satisfying MCL 500.3174. If he had not, this analysis might well be different—I do not mean to suggest that the equitable nature of rescission can construct, via a legal fiction, notice owed to a third party which was not as a matter of historical fact actually provided.

4

This reasoning once again frustrates the equitable character of both rescission and subrogation. As noted, rescission is revisionist history in the name of fairness—a legal fiction. The fact that Esurance successfully rescinded the policy it issued to Luana does not turn it into a volunteer such that subrogation relief is precluded. To retroactively construe Esurance's PIP payments as "voluntary" because the parties are being treated as though the policy never existed would be unjust—at the time the PIP payments were made, Esurance did not yet know the policy did not exist and therefore may have made the payment under a reasonable but erroneous impression of its legal duty. "A payment is not voluntary when made . . . in ignorance of the real state of facts, or under an erroneous impression of one's legal duty." *Detroit Auto Inter-Ins Exch v Detroit Mut Auto Ins Co*, 337 Mich 50, 54; 59 NW2d 80 (1953) (quotation marks and citation omitted).[4] When "the real state of facts" is a legally constructed one—i.e., that the policy is rescinded and thus the parties are to be treated as though the policy had never existed—a payment made in ignorance of that subsequent rescission cannot be held against the subrogor to turn it into a volunteer.

In short, then, I would hold that: (1) the trial court's *expressio unius* holding was erroneous, (2) whether Roshaun had a claim against defendants to which Esurance can be subrogated turns on whether Roshaun *would have had* a claim against defendants *if* the policy Esurance issued to Luana had been rescinded before Roshaun's accident, and (3)

---

[4] Of course, neither ignorance of the true facts nor an erroneous impression of one's legal duty is automatic insulation against being a volunteer. A party who *happens* to have been ignorant of the true facts could, presumably, render itself a volunteer for some other reason, and in similar fashion, a party whose erroneous impression of its legal duties is *unreasonable* could still be a volunteer.

rescission of the policy Esurance issued to Luana does not turn Esurance into an after-the-fact "volunteer" such as to defeat this subrogation action. Having made these corrections, I would remand the case to the trial court for it to resume its consideration of the matter from the point the proceedings ended there in light of these corrections.

Elizabeth T. Clement
David F. Viviano
